ANDERSON, WARDEN, UNITED STATES PENI-
TENTIARY, LEAVENWORTH, KANSAS, v.
CORALL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

No. 44. Argued October 4, 1923.—Decided November 12, 1923.

1. Mere lapse of time, without imprisonment or other restraint
   contemplated by law, does not constitute service of sentence.
   P. 196.
2. Under the Parole Act of June 25, 1910, c. 387, 36 Stat. 819, as
   amended January 23, 1913, c. 9, 37 Stat. 650, where a federal
   convict breaks his parole and is retaken under a warden's warrant,
   the Board of Parole may revoke his parole at any time before his
   sentence has been fully served and require him to complete his
   term of imprisonment without deduction for the time spent on
   parole. P. 197.
3. With reference to the power of the Board to act as above, time
   intervening between the issuance of the warden's warrant and its
   execution, during which the federal convict was incarcerated in a
   state penitentiary for a state offense, is not to be counted as time
   served under his federal sentence. P. 197.

279 Fed. 822, reversed.

CERTIORARI to a judgment of the Circuit Court of
Appeals which affirmed an order of the District Court in
habeas corpus discharging the present respondent from
imprisonment in the federal penitentiary at Leavenworth.

Mr. Alfred A. Wheat, Special Assistant to the Attorney
General, with whom Mr. Solicitor General Beck was on
the brief, for petitioner.

Mr. Lee Bond, for respondent, submitted.

MR. JUSTICE BUTLER delivered the opinion of the Court.

On November 25, 1914, Corall was convicted of the
crime of breaking into a postoffice and was sentenced to

74308°—24——13

be confined in the Leavenworth penitentiary for three years from that date. He served in prison until February 24, 1916, when he was allowed to go out on parole under the Act of June 25, 1910, c. 387, 36 Stat. 819, as amended by the Act of January 23, 1913, c. 9, 37 Stat. 650, portions of which are printed in the margin.[1] On June 28, 1916, the warden in accordance with § 4 issued a warrant for the retaking of Corall as a parole violator. Before he was retaken, and in October, 1916, he was convicted at Chicago of another crime and sentenced therefor to the Illinois state penitentiary at Joilet, where he was confined until some time in December, 1919. After his release from that prison he was retaken, December 17,

---

[1] Section 1 is to the effect that prisoners may be released on parole as provided in the act.

Section 2 provides that the superintendent of prisons of the Department of Justice and the warden and physician of each United States penitentiary shall constitute a board of parole for such prison which shall establish rules and regulations for its procedure subject to the approval of the Attorney General.

Section 3. " That if it shall appear to said board of parole . . . that there is a reasonable probability that such applicant will live and remain at liberty without violating the laws, and if in the opinion of the board such release is not incompatible with the welfare of society, then said board of parole may in its discretion authorize the release of such applicant on parole, and he shall be allowed to go on parole outside of said prison, and, in the discretion of the board, to return to his home, upon such terms and conditions, including personal reports from such paroled person, as said board of parole shall prescribe, and to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be provided for by act of Congress; and the said board shall, in every parole, fix the limits of the residence of the person paroled, which limits may thereafter be changed in the discretion of the board. . . ."

Section 4. " That if the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or

1919, on the warden's warrant to the Leavenworth penitentiary. In January, 1920, the parole board, pursuant to § 6, took action appropriate to revoke and terminate the parole. The validity of that action is the only question involved.

Corall claims that, allowing deductions for good conduct (Act of June 21, 1902, c. 1140, 32 Stat. 397), the term of his sentence actually ended before the expiration of three years from the date it began and on or about March 17, 1917. The warden contends that the time elapsing between February 24, 1916, when he was paroled, and December 17, 1919, when he was retaken, can not be taken into account; that when the board acted to revoke his

---

terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same, for the retaking of such prisoner."

Section 5. "That any officer of said prison or any federal officer authorized to serve criminal process within the United States, to whom such warrant shall be delivered, is authorized and required to execute such warrant by taking such prisoner and returning him to said prison within the time specified in said warrant therefor. . . ."

Section 6. "That at the next meeting of the board of parole held at such prison after the issuing of a warrant for the retaking of any paroled prisoner, said board of parole shall be notified thereof, and if said prisoner shall have been returned to said prison, he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

Section 7 provides for a parole officer for each penitentiary, and makes it the duty of such officer to aid paroled prisoners in securing employment and to visit and exercise supervision over them while on parole and provides that the supervision of paroled prisoners may also be devolved upon the United States marshals when the board of parole may deem it necessary.

parole, the sentence had not been served, and he was bound to serve that part of it which remained unexpired when parole was granted. February 4, 1921, Corall made application for a writ of *habeas corpus* to the District Court for the District of Kansas. That court decided he was illegally held and ordered his discharge. The warden appealed to the Circuit Court of Appeals where the judgment was affirmed.

Mere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence. Escape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term. *Dolan's Case,* 101 Mass. 219, 222; *Petition of Moebus,* 73 N. H. 350, 352. The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment. The sentence and service are subject to the provision of § 6 that if the parole be terminated the prisoner shall serve the remainder of the sentence originally imposed without deduction for the time he was out on parole.

Corall's violation of the parole, evidenced by the warden's warrant and his conviction, sentence to and confinement in the Joliet penitentiary, interrupted his service under the sentence here in question, and was in legal effect on the same plane as an escape from the custody and control of the warden. His status and rights were analogous to those of an escaped convict. *Drinkall* v. *Spiegel, Sheriff,* 68 Conn. 441, 449, 450. The term of his sentence had not expired in October, 1916, when, at Chicago, he was convicted of another crime and sentenced to the Joliet penitentiary. Then—if not earlier—he ceased to be in

the legal custody and under the control of the warden of the Leavenworth penitentiary, as required by § 3 of the act and the terms of the parole authorized thereby. His claim that his term expired in 1917 before he was retaken and while he was serving sentence at Joliet cannot be sustained, and we hold that it had not expired in January, 1920, at the time of the action of the board. Under § 6, the board was authorized at any time during his term of sentence in its discretion to revoke the order and terminate the parole; and to require him to serve the remainder of the sentence originally imposed without any allowance for the time he was out on parole.

*The judgment of the Circuit Court of Appeals is reversed, and the case is remanded to the District Court with directions that the respondent, Arthur Corall, be restored to the custody of the warden of the United States penitentiary at Leavenworth, Kansas.*