**UNITED STATES ex rel. ANDERSON v. ANDERSON, Marshal.**

**No. 10151.**

Circuit Court of Appeals, Eighth Circuit.

March 11, 1935.

Robert V. Rensch, of St. Paul, Minn., for appellant.

George F. Sullivan, U. S. Atty., and George A. Heisey, Asst. U. S. Atty., both of St. Paul, Minn., for appellee.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

FARIS, Circuit Judge.

Appellant, as petitioner, sued out a writ of habeas corpus in an effort to secure his release from the custody of the Marshal of the district of Minnesota. Being cast in that action, he appealed in the conventional manner. The facts are few and simple. So much of the facts as shall serve to render intelligible the legal point up for discussion runs thus:

Heretofore, and on June 22, 1932, petitioner, on his plea of guilty, entered in the district of Minnesota, was sentenced to imprisonment in the United States Industrial Reformatory at Chillicothe, Ohio, for a term of eighteen months. For reasons not at all relevant, this sentence was stayed from time to time, till April 25, 1933. Shortly thereafter he was actually incarcerated, and so continued till he was paroled on December 10, 1933. On August 21, 1934, the Parole Board issued a warrant, called in the record a parole warrant, which recited that petitioner had violated his parole, and designating him as a fugitive from justice, required the appellee to arrest him and return him to his place of former incarceration. This arrest the appellee consummated, and, to obtain his release from the custody thus entailed, petitioner sued out the writ of habeas corpus.

Petitioner contends that his sentence expired on July 8, 1934, and therefore no lawful power was residual in the Parole Board to revoke his parole, or to cause his arrest, under a parole warrant, issued on Au-

gust 21, 1934. This contention rests upon the fact, that had he not been paroled, but had remained in prison under good behavior, his statutory, and so-called "good time" deduction would have cut down his original sentence by 108 days. So that, instead of his term expiring on October 24, 1934, it would have expired July 8, 1934. The answer of appellee to this contention is, that the parole warrant was issued within the term of the sentence, which, unaffected by time reduction for good behavior, did not expire till October 24, 1934. Moreover, from the stipulated facts on which the case was heard and submitted in the district court, it appears that the act or acts on which the revocation of the parole was bottomed occurred in February, 1934. The case is unique, and the precise question involved seems res integra, although ephemeral, since a subsequent unambiguous statute will prevent its recurrence. Largely, it involves a matter of statutory construction, to be mixed with a modicum of common sense. The labors of this court in the matter have been greatly lessened by the very able and well-reasoned opinion of the District Court.

■ Obviously, the single question here up for judgment is, Has the Parole Board the power to revoke a parole at any time within the term of imprisonment, as fixed by the sentence? Ancillary to this single question, others of superseded and amended statutes come into the case to confuse it. This statutory law has grown by accretion, with the result that it is difficult to reconcile all of these statutes. The Act of June 29, 1932 (47 Stat. 381), now sections 716a, 716b, tit. 18 USCA, does not apply, because these sections were enacted seven days after sentence was imposed on petitioner, and the act applies to those "hereafter sentenced." The Act of May 13, 1930 (46 Stat. 272) now sections 723a, 723b, and 723c, tit. 18 USCA, however, does apply. The effect of the act last above was to transfer all power theretofore inherent in the prison warden and the several prison boards of parole, to the Board of Parole created by the act. If so it be, that before the Act of May 13, 1930, it was the duty of the warden to keep an official eye both on the conduct of the paroled prisoner outside of prison and on his record of good behavior in a prison where he was no longer incarcerated, for the purpose of reducing his term of imprisonment (about which naturally we venture no opinion), this act abrogated that duty. For the act clearly shifted this duty from the warden to the Parole Board.

There is no necessary connection between statutes which provide for reducing the maximum sentence, perforce observance of prison rules and lack of prison punishment, and statutes providing for parole. It will no doubt be found true that the usual legislative history is first a statute providing a fixed term of imprisonment; later, a statute in the interest of ease of prison government, by reducing the maximum sentence to a minimum sentence, on account of good behavior; and still later, a statute providing for parole. See 18 Stat. 479, c. 145; 32 Stat. 397, c. 1140; and 36 Stat. 819, c. 387.

■ The federal statute providing for reduction of the maximum sentence for good conduct says that "each prisoner * * * whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence" (in the case at bar of 108 days). Section 710, tit. 18 USCA. The statute providing for parole (18 USCA § 716) goes much farther than this, and renders the matter of parole largely, indeed wholly [Redman v. Duehay (C. C. A.) 246 F. 283], a matter of discretion; while the duty to reduce a maximum sentence, present compliance by the prisoner with statutory conditions, is an absolute one. Howard v. United States (C. C. A.) 75 F. 986, 34 L. R. A. 509.

■ The case of Anderson v. Williams (C. C. A.) 279 F. 822, 825, is strongly relied on by both petitioner and appellee. Passing for a moment the fact that the above case was reversed by the Supreme Court (sub. nom. Anderson v. Corall, 263 U. S. 193, 44 S. Ct. 43, 68 L. Ed. 247), there is yet one outstanding difference in the facts therein, as compared to the facts herein up for judgment. Therein, as here, it appears that the paroled prisoner committed, before his minimum sentence expired, misbehavior meet for revocation of his parole. But therein also it appears that the local Board of Parole did not arrest or return the paroled prisoner to the penitentiary till after his full maximum sentence had, in terms of years since sentence, fully expired. Here, only the minimum sentence had expired; the maximum sentence yet lacked some two months of expiration.

It must be conceded that the Williams Case, supra, is strong authority for the basic principle on which petitioner relies, that is,

that a paroled prisoner endures a part of his punishment within prison walls and a part thereof within the bounds of the terms and territory, fixed by the conditions of his parole, and so, when the sum total of these two punishments equal that fixed by the sentence, he must be discharged. Even on the above point the comfort afforded petitioner is, as we shall later point out, obviously not unalloyed. As forecast, however, the case of Anderson v. Williams, supra, was reversed by the Supreme Court, and, as we construe the case of Anderson v. Corall, supra, it was reversed upon the very point above referred to; for this point was undoubtedly all that stood between reversal and affirmance, and yet the case was reversed.

While the opinion of the Supreme Court in the Corall Case, supra, contains abstract language from which petitioner may derive comfort, the situation there, which is not the situation here, must be borne in mind. It is clear, however, that the difference is only one of degree. For if a paroled convict, on parole broken, may, as in the Corall Case, supra, be arrested and returned to prison to serve the remainder of his maximum sentence as fixed by the court, after that sentence has ended by flux of time, a fortiori, the like may be done at any time before such term has ended, as is the fact in the case at bar. As to what was actually ruled in that case, the syllabus fairly expresses, in this language: "Under the Parole Act of June 25, 1910, c. 387, 36 Stat. 819, as amended January 23, 1913, c. 9, 37 Stat. 650 [18 USCA § 714 et seq.], where a federal convict breaks his parole and is retaken under a warden's warrant, the Board of Parole may revoke his parole at any time before his sentence has been fully served and require him to complete his term of imprisonment without deduction for the time spent on parole."

And this is the identical construction put on the act which controls this case by the Circuit Court of Appeals of this circuit in the case of Anderson v. Williams, supra; for Judge Sanborn, writing the opinion in that case, said: "By the Act of June 25, 1910, the Congress granted to the board of parole the authority during the term of the sentence of imprisonment adjudged by the court (1) to revoke an order of parole it had made, and (2) to terminate such parole, and it enacted that the effect of such revocation and termination should be, that the prisoner should serve the remainder of the sentence originally imposed, and that the time the prisoner was out on parole should not be taken into account to diminish the time for which he was sentenced."

Other language follows, but it is too plain for argument that such language had to do with the particular facts confronting the court in that case, which materially differ from the facts in the case at bar. For the Williams Case, supra, dealt with the facts that the paroled convict was neither arrested nor returned to serve the remainder of his term of imprisonment, till some two years after the expiration of his maximum sentence; though there, as here, the bad conduct on which revocation of the parole was bottomed occurred before the expiration of the minimum sentence. Had the facts in the case at bar been up for judgment in the Williams Case, supra, the construction put by Judge Sanborn on the language of section 4, infra, would inevitably call for affirmance of the judgment herein of the court below.

In fact, it seems to us that no other construction, except that put by Judge Sanborn upon the language of section 4, of the Act of June 25, 1910 (36 Stat. 820) and now section 717, tit. 18 USCA, is at all possible. For that language is: "If the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same, for the retaking of such prisoner."

That the words "term or terms of the prisoner's sentence," as used in the statute quoted above, mean maximum sentence (as fixed by the court) and not minimum sentence as reduced by good conduct, seems plain, not only from what Judge Sanborn makes clear, but from the additional fact that, when the Congress in this statute referred to what we in the expression of our views have called minimum sentence, it was careful to add the words "less good time allowance." So it is significant that in the section last above quoted it used no such modifying words, but simply says, that upon parole broken, a warrant for the retaking of the prisoner may be issued "at any time within the term or terms of the prisoner's sentence."

The ingenious technical contention urged by petitioner would, if sustained, involve

378

numerous absurdities. It would require the warden to credit the paroled convict with his good time deductions, without knowledge of whether he had earned this credit or not. The paroled convict could violate every condition of his parole, yet so long as he faithfully observed all the rules of a penitentiary (in which he was no longer confined) and was not subjected to any punishment (impossible of infliction by reason of his physical absence) he could claim his good time allowance and go free. Even numerous crimes, properly laid at the paroled convict's door, and done while on parole, if undiscovered till his good time allowance would ordinarily operate to free him, would be no bar to freedom. And as forecast, it would require the warden to perform a duty of supervision over the paroled convict, of which the warden has been relieved by statute. A well-settled rule of statutory construction enjoins courts not to attribute to the Legislature a construction which leads to absurd results.

We are of opinion that the case was correctly ruled by the learned trial judge, and so it follows that the judgment should be affirmed.