**CLARK v. SURPRENANT.**
No. 8552.

Circuit Court of Appeals, Ninth Circuit.
Feb. 21, 1938.

Ben Harrison, U. S. Atty., and Howard V. Calverley, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal taken by the United States Marshal from an order of the District Court for the Southern District of California, Central Division, discharging George S. Surprenant, Jr., on a writ of habeas corpus.

The facts as they' appear from the record are substantially as follows:

On his plea of guilty, appellee was sentenced by the United States District Court for the Southern District of California to

serve a term of 15 months in the United States Penitentiary at McNeil Island, Wash.

Under the provisions of 18 U.S.C.A. § 710, a prisoner in a federal penitentiary, by reason of his good behavior, is entitled to a deduction of six days from his term for each month of his sentence. By operation of the above statute, appellee was entitled to a total of ninety days deduction from his term of sentence and, in accordance therewith, appellee was released on April 15, 1936, having served his fifteen months' sentence, less credits for good conduct which had been allowed. In any event his term would have expired on July 14, 1936.

Appellee was instructed to go to Cleveland, Ohio, and report to one Patrick Grady, his father-in-law, who was designated and appointed by the United States Parole Board as appellee's parole adviser. Appellee was to remain in the Northern District of Ohio and was not to leave said District without consent of his said adviser.

On July 5, 1936, appellee, with the consent of his parole adviser, left Cleveland and came to California.

On July 13, 1936, a few hours before appellee's service of sentence would have been complete, a member of the United States Board of Parole in Washington, D. C., issued a warrant for the arrest and return of appellee to McNeil Island Penitentiary for alleged violation of the conditions of his release. This warrant was not received by Robert E. Clark, United States Marshal for the Southern District of California, appellant herein, until August 29, 1936, about a month and a half after the end of the term of sentence. On that day appellee was taken into custody at Los Angeles, Cal. On the same day, appellee, by his father, George S. Surprenant, Sr., petitioned the United States District Court for, and obtained therefrom, a writ of habeas corpus returnable September 8, 1936.

Appellant in his return to the writ merely showed that he was holding appellee under the said warrant issued July 13, 1936, which recited that appellee was sentenced to serve fifteen months and had been released conditionally from the United States Penitentiary, McNeil Island, Wash., on the 15th day of April, 1936; that the member of the Board issuing the warrant had been presented with reliable information that the prisoner named in the warrant had violated the conditions of his release and directing his return to the institution designated.

As stated, this warrant was not received by the appellant Marshal until August 29, 1936.

At the hearing George S. Surprenant, Sr., testified that he was the father of appellee and that he was acquainted with Patrick Grady, the parole adviser of his son, who lived in Cleveland, Ohio, that in the early part of 1936 he had talked to Mr. Grady concerning his son's remaining in the Northern District of Ohio or returning to California. Later a communication was received from appellee asking that funds be sent him so that he could stay at a hotel until July 15th, which was the date of the expiration of his parole. He explained that Mr. Grady wished him to return to California. Appellee's father then called Mr. Grady on long distance telephone and asked him what the trouble was, who said, "Well just simply this, that we don't like the boy, he won't work—he humiliated me by going to one of my competitors and seeking a job, he does not get along with his mother-in-law and won't work unless there is $50.00 a week." The father then told Grady that he did not want the boy placed in a position where he would get in trouble with the federal authorities as he was on probation. Grady said that he was his probation officer and that he wanted appellee to leave Cleveland. When asked if appellee had given any grievance, Grady replied, "No, we are just—don't want him here; he has got the swell-head, he is too good for the job that he can get here in Cleveland." Appellee's father then told Grady that if he would arrange for appellee to leave Cleveland he would send him transportation. Grady's reply was, "You send it just as quick as you can." When asked if appellee would have to get permission from the probation department of Cleveland, Grady said, "There is no probation department in Cleveland; I am the parole officer."

Mr. Meador, Federal Probation and Parole Officer for the Southern District of California, testified that he knew the appellee and that he had a long distance conversation with Mr. Grady, appellee's parole adviser, and Mr. Grady had stated that he did not in exact words give permission for appellee to leave the Northern Dis-

trict of Ohio, but that he talked with appellee's father on the telephone and he could see where the Surprenants could understand that he meant authority for the young man to leave the Northern District of Ohio. As confirming the foregoing, there was offered in evidence the following:

"Nightletter

"Ray. L Huff Parole Executive

"Dept of Justice

"Washington D C

"Regarding George Surprenant Jr Matter Stop His Dad Telephoned Me Late One Night Early In July That He Had Heard From His Son In Cleveland To The Effect The Boy Was Dissatisfied In The East And Wanted Him Send Transportation To California Stop My Answer To the Best of My Recollection Was That He Could Do As He Choose Or Words To That Effect Stop Under The Circumstances I Can Now Readily See How They Would Think It Was Okay For The Boy To Leave When He Did Stop I Do Not Believe He Intended Any Parole Violation

"Pat Grady."

Concerning parole regulations and practices, the Federal Probation and Parole Officer further testified:

"Your Honor, If I might explain one point in this matter, I referred to parole but really the matter is not parole. There is and has been since 1932 a difference in forms of supervision of persons released from a Federal prison. One is the parole as we understand it. That is where a portion of the term has been served and, for reasons, the prisoner released under supervision for the balance of the term. That is a parole.

"The other is where good time is earned by exemplary conduct on the part of an inmate in a Federal prison but he is not granted parole at the expiration of all the time less the good time earned. In a 15 months—six days per month—he is then released for the balance of the term to which he had been sentenced under supervision but with the difference that in many cases the release—what they call the conditional release—men without a parole adviser and permit them to go other than to the place from which they had been sentenced—the district from which they had been sentenced, and, as a matter of fact, it is really in between regular parole and the probationary sentence. In other words, the man is under supervision.

"The Court: That is the situation here, Mr. Meador, George has served the full twelve months period of the fifteen months that he had been sentenced to, and the remaining 90 days that he was released represented the time he had earned as good conduct credit at McNeil Island?

"The Witness: That is right. He was on release, not on parole and not on probation.

"The Court: Are you familiar with the fact that with respect to persons admitted conditionally, such as you have just described, that when they report to a parole adviser, that the instructions say that the parole adviser has authority to allow the parolee to leave the parole limit for a period not exceeding 20 days, but, if the absence is to be for longer than that, further permission must be received from the parole board?

"The Witness: Well, that is true. In this particular case, for one reason, there is no Federal Probation Parole Officer in the northern district of Ohio. There is in the southern district. Therefore, for parole purposes, the probation officer at Columbus, Ohio, in the southern district, acts for both the northern and southern divisions, but he has not authority to travel in the northern division except on specific orders from the parole office in Washington. In that case more authority is given to the lay parole adviser than would be, for instance, in the southern district of California where we have probation officers.

"The Court: But, in this instance, was Mr. Patrick Grady the parole adviser?

"The Witness: I understand that is true. * * *"

"* * * Any probation officer has authority to grant permission for a parolee to leave the district in which he is on parole for a period of 20 days or less at any time. * * *"

The appellant relies upon a single assignment of error, to wit: "The court erred by exceeding its jurisdiction in granting the writ of habeas corpus and discharging the petitioner from the custody of the respondent."

Appellant argues that appellee was under parole supervision for the period of 90 days following his release from McNeil

Island Penitentiary, and that the Board of Parole had exclusive authority to issue a warrant for retaking him for violation of his parole.

Section 716b, title 18 U.S.C.A., provides:

"Any prisoner who shall have served the term or terms for which he shall after June 29, 1932 be sentenced, less deductions allowed therefrom for good conduct, shall upon release be treated as if released on parole and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms specified in his sentence."

Section 719, title 18 U.S.C.A., Act June 25, 1910, c. 387, § 6, 36 Stat. 820, provides as follows:

"At the next meeting of the board of parole held at such prison after the issuing of a warrant for the retaking of any paroled prisoner, said Board of Parole shall be notified thereof, and if said prisoner shall have been returned to said prison, he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

It is contended that by reason of these statutes the District Court is deprived of jurisdiction to inquire into the lawfulness of the custody of appellee. In other words, appellant insists that under this warrant appellee must be taken to the penitentiary and that he would be required there to remain until the Parole Board had taken definite action by actually revoking the parole and that as long as the Board's discretion had not been exercised no court may lawfully intervene. Thus in this case this appellee, even after the term of his sentence had lawfully expired, must submit to be taken to the penitentiary and held there for an indefinite period until it pleased the Board of Parole to pass upon his statutory rights. No such exclusive power is conferred upon the Board of Parole.

In an ordinary case where the power conferred by statute was complete and unquestionable and where the proceedings were regular, we would feel disposed to agree with the contention of the appellant to the extent that where the action was to be, or may have been, taken within the term of the sentence that the court should refrain from intervention until a Parole Board had taken action; and to that extent appellant's position finds support in the authorities.

Here we have an altogether different situation. The testimony is convincing that the appellee did not intentionally or at all violate his parole and the full term of his sentence had therefore expired as completely satisfied. In this case then where the Parole Board had never revoked the parole, where the full term of sentence had expired without action, the court not only had the right but the duty to determine whether appellee had violated the conditions of his release.

The incident that a few minutes before the expiration of the completed term of the sentence a warrant was issued which was not served until long after the full term of the sentence had expired cannot be invoked to deprive the court of jurisdiction.

With regard to habeas corpus proceedings in federal courts, it is expressly provided by statute that the court, or justice, or judge, before whom the proceedings may be brought "shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require." Revised Statutes, § 761, 28 U.S.C.A. § 461; 12 R.C.L. § 68, p. 1250.

The office of the writ of habeas corpus is to afford the petitioner a speedy and effective method of securing his release when illegally restrained of his liberty.

The writ lies in all cases of illegal imprisonment, by commitment, detention, or restraint, for whatever cause, and under whatever pretense. The writ goes to inquire into the cause of imprisonment.

In habeas corpus proceedings the petitioner is entitled to have determined his rights to good time allowances, where such allowances would warrant his release. Cox v. McConnell, 5 Cir., 80 F.2d 258; Aderhold v. Cooper, 5 Cir., 80 F.2d 259.

"Habeas corpus will lie where the original detention was legal, but has become illegal by reason of matter ex post facto, as where * * * a person is restrained of his liberty under a judgment of conviction containing a sentence which has been served. * * *" 12 R.C.L. § 29, p. 1210.

"One who has been released on parole may on rearrest for violation of conditions show on habeas corpus that he has performed the conditions, or that he has a legal excuse for not having done so." 12 R.C.L. § 62, p. 1244.

■ Where a prisoner has complied with statutory conditions, it is mandatory to reduce the maximum sentence to comply therewith.

■ Appellant nevertheless insists that appellee's right to deductions from his sentence for good behavior is a matter exclusively reserved to the Parole Board for determination. This is not always so. The instant case comes within that well-defined distinction which exists between cases strictly of parole where the Board had larger discretionary powers and cases where for earned good time a prisoner is conditionally released. The distinction is indicated in the case of United States v. Anderson, 8 Cir., 76 F.2d 375, 376, wherein the court remarked, "There is no neces ary connection between statutes which provide for reducing the maximum sentence, perforce observance of prison rules and lack of prison punishment, and statutes providing for parole."

Under the statute, 18 U.S.C.A. § 716b, a prisoner released by reason of allowance for good conduct shall be treated as if released on parole "until the expiration of the maximum term or terms specified in his sentence."

Jurisdiction to revoke paroles is thereby exclusively conferred upon the Board of Parole only if action is taken before "the expiration of the maximum term or terms specified in his sentence." This question was squarely before the court in Anderson v. Williams, 8 Cir., 279 F. 822. In construing the sections of the parole statutes pertinent here, Judge Sanborn speaking for the court said at page 825 of 279 F.:

"By the Act of June 25, 1910, the Congress granted to the board of parole the authority during the term of the sentence of imprisonment adjudged by the court (1) to revoke an order of parole it had made, and (2) to terminate such parole, and it enacted that the effect of such revocation and termination should be, that the prisoner should serve the remainder of the sentence originally imposed, and that the time the prisoner was out on parole should not be taken into account to diminish the time for which he was sentenced. That the Congress did not intend by this act to vest and did not vest in the board the power to revoke such a parole after the parole and the term of imprisonment had expired, and thereby to enable it at any time, perhaps years after the termination of both, to inflict upon the prisoner another term of confinement in the penitentiary for a length of time equal to that part of his sentence which he served under the parole, seems clear from the following considerations:

"The Congress provided in section 3 of the act [18 U.S.C.A. § 716] that the board might grant a parole of a prisoner which would allow him to go on parole outside the prison, and 'to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled, and until the expiration of the term or terms specified in his sentence, * * *' but not after the expiration of such sentence. The Congress provided, by section 4 of the act [18 U.S.C.A. § 717], that, if the warden of the prison should have information that the paroled prisoner had violated his parole, 'then said warden, at any time within the term or terms of the prisoner's sentence,' but not after the expiration of such term or terms, 'may issue his warrant * * * for the retaking of such prisoner.' Section 6 [18 U.S.C.A. § 719], provides that on the return of the prisoner under such warrant, and after an opportunity for the prisoner to appear before the board, it 'may then or at any time in its discretion revoke the order and terminate such parole,' and that, 'if such order of parole shall be revoked and the parole so terminated,' but not otherwise, or on any other condition, 'the said prisoner shall serve the remainder of the sentence originally imposed,' without any allowance on account of the time he served his sentence under the parole. But when, as in the cases in hand, the terms of the sentences and the paroles had expired long before any hearings concerning or orders of revocation of the paroles, the latter, having already terminated, could not be terminated by orders of revocation or ter-

mination, and the prisoners could not fall under the provision of section 6 that where the paroles were terminated by the orders of revocation pursuant to the provisions of the act, the prisoners should serve the remainders of their original sentences without any allowance for the terms they served under their paroles."

■ Appellant, in his brief, cites United States·ex rel. Anderson v. Anderson, D.C., 8 F.Supp. 812, affirmed 8 Cir., 76 F.2d 375. In this case it is conceded that the case of Anderson v. Williams, supra, is strong authority for the basic principle upon which appellee here relies, that is, that a paroled prisoner endures a part of his punishment within prison walls and a part thereof within the terms of his parole. When the sum total of these two punishments equal that fixed by the sentence, he must be discharged. However, it is suggested that the case of Anderson v. Williams was overruled by the Supreme Court in the case of Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 45, 68 L.Ed. 247, and is not to be taken as authority.

We do not think that this conclusion is correct, the Williams Case was not appealed and the Supreme Court in the Corall Case held that having committed a crime and being incarcerated in a prison in a different state he "was in legal effect on the same plane as an escape from the custody and control of the warden. His status and rights were analogous to those of an escaped convict." It is noteworthy of remark that this decision commenting on a section of the statute under consideration here contains this significant language, "Under section 6, *the board was authorized at any time during his term of sentence* in its discretion to revoke the order and terminate the parole, and to require him to serve the remainder of the sentence originally imposed without any allowance for the time he was out on parole." Italics supplied.

While this observation may be regarded as dictum, it indicates an expression of opinion by the Supreme Court in harmony with our view herein expressed. Christianson v. Zerbst, Warden, 10 Cir., 89 F.2d 40.

On the general principles governing the law of habeas corpus, the conclusion is irresistible that this is a proper case for the application of that remedy. We do not see that appellee has another remedy that would be adequate and speedy. In granting the writ, the District Court acted as "law and justice require."

Affirmed.

MATHEWS, Circuit Judge.

I concur in the result.

There were in this case three assignments of error. Two of the assigned errors (assignments 1 and 3) were not specified in appellant's brief,[1] as required by our rule 24, were not argued by appellant, in his brief or orally, and should, therefore, be deemed abandoned. This leaves for consideration assignment 2, which reads: "The court erred by exceeding its jurisdiction in granting the writ of habeas corpus and· discharging [appellee] from the custody of [appellant]."

Appellant's brief states: "The question involved is: Did the District Court have jurisdiction to inquire into the lawfulness of custody under a warrant issued· by the United States Board of Parole before the Board has an opportunity to ·give appellee a hearing and take final action?"

Thus, it is seen, the only question presented to this court is whether or not the District Court had jurisdiction of this case. Appellant contends that the District Court had no such jurisdiction. This contention is without merit. By sections 751–761 of the Revised Statutes, as amended, 28 U.S.C.A. §§ 451–461, District Courts and judges thereof are expressly empowered "to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty," where, as in this case, the applicant "is in custody under or by color of the authority of the United States," and thereupon "to dispose of the party as law· and justice require." Such jurisdiction exists and has frequently been exercised in cases of this character. See, for example, United States v. Anderson, 8 Cir., 76 F.2d 375, cited by appellant, and Christianson v. Zerbst, 10 Cir., 89 F.2d 40. The District Court had jurisdiction of this case.

Whether, upon the facts shown, the District Court was right or wrong in holding that appellee's detention was unlawful, we have no occasion to decide, no such question being presented to this court.

The order appealed from should be affirmed.

---

[1] I refer to appellant's amended brief filed November 18, 1937, superseding his original (defective) brief filed June 12, 1937.