UNITED STATES ex rel. DE LUCIA v.
O'DONOVAN.

No. 48C867.

United States District Court
N. D. Illinois. E. D.

Nov. 10, 1948.

William Scott Stewart, of Chicago, Ill., for petitioner.

Otto Kerner, Jr., U. S. Atty., of Chicago, Ill., for respondent.

IGOE, District Judge.

On June 16, 1948, Louis Campagna, Paul De Lucia, Phil D'Andrea and Charles Gioe filed their petition in this court for the writ of habeas corpus. The petition alleges that the petitioners had been convicted and sentenced to serve ten years in a federal penitentiary after a trial on an indictment returned by a federal grand jury in the United States District Court for the Southern District of New York; that said indictment charged the petitioners and other defendants with conspiracy to violate Section 420a [now § 1951], Title 18 U.S.C.A., known as the Federal Anti-Racketeering Act by extorting money from certain motion picture producers; that the judgment was affirmed by the Circuit Court of Appeals and after the petitioners served one third of the sentences imposed, they were granted paroles.

The petition asserts that the judgment of conviction in the District Court of New York is void because, among other things, it resulted from perjured testimony.

The petition further alleges that since the paroles were granted to the petitioners, a committee of Congress has conducted an investigation in an attempt to show that the paroles were brought about by corruption and undue influence and should not have been granted; that the committee seeks to compel the present members of the Parole Board to revoke the paroles; that although the petitioners have not violated the conditions of their paroles, members of the Parole Board have told the Congressional Committee that action will be taken on said paroles; that the petitioners have requested a hearing before the Parole Board before any action is taken to revoke the paroles but this request has been refused. A five volume copy of the transcript of the Congressional Committee hearings was filed with the petition.

Although the Parole Board had not yet revoked the paroles when the petition for the writ of habeas corpus was filed, the petition requests that should such action be taken by the Parole Board, this court issue the writ and grant the petitioners a hearing to determine if there is any evidence to support such action and to grant whatever

relief is necessary to assure to the petitioners due process of law.

On June 15, 1948, Fred D. Rogers, one of the members of the Parole Board, signed and issued a warrant for the arrest and return to the federal penitentiary of the petitioner Paul De Lucia. The warrant recites the judgment of conviction in New York and the release of De Lucia on parole on August 13, 1947. It states that reliable information has been presented to the member of the Parole Board whose name is affixed to the warrant that the paroled prisoner named in the warrant has violated the conditions of his parole and that said prisoner is declared to be a fugitive from justice.

On June 16, 1948, the United States Marshal of this District executed the parole warrant by taking De Lucia into custody. Thereupon this court issued the writ of habeas corpus returnable forthwith. On the same day the Marshal produced the prisoner in court and filed his return to the writ.

The Marshal stated in the return that De Lucia was held under the parole warrant; that the petition for the writ did not state a cause of action because this court is without jurisdiction: (a) to review the judgment of conviction in New York; (b) to review the action of a member of the Parole Board in issuing a warrant; and (c) to inquire into the custody of a prisoner being held under a parole violation warrant until after the parole board has held the hearing on the warrant that is required by Section 719 [now § 4207] of Title 18 U.S.C.A.

De Lucia furnished bond and is now at liberty under the writ pending determination of the issues. The other two petitioners were not brought before this court and are not parties to this proceeding.

An amendment to the Marshal's return was filed on July 8, 1948, denying that De Lucia was being illegally restrained under the New York judgment and denying and putting in issue the allegations of the petition in that respect.

On July 7, 1948, De Lucia filed his traverse to the Marshal's return. The traverse alleges that De Lucia's parole was issued in good faith by the parole board; that there is no basis in fact or law for its revocation; that a hearing will disclose that there has not been any violation of the conditions of the parole; and that the warrant was issued arbitrarily without just cause. The traverse also recites the testimony of different members of the Parole Board given at the Congressional Committee hearings on different dates. It alleges that Judge Rogers, the member who signed the warrant, testified before the Committee on June 7, 1948, that the parole board had not received any reports of parole violation by De Lucia. It recites testimony by other members of the board that although De Lucia was being watched by the FBI and the Chicago police, no report of violation had been received from the parole office in Chicago, notwithstanding that the board members knew of no instance where a parole had been revoked without the complaint coming from the parole officer. Other allegations in the traverse attacking the evidence supporting the conviction in New York are disregarded because the writ of habeas corpus cannot be used as a means of securing a review or modification of the judgment of conviction upon which a petitioner's custody and detention are based. Story v. Rives, 68 App.D.C. 325, 97 F.2d 182.

The United States Attorney acting in the Marshal's behalf, filed a demurrer to the traverse.

█ The function of the writ of habeas corpus is to provide the prisoner with an immediate hearing to determine whether his detention is legal and whether it is justified by law. Clark v. Surprenant, 9 Cir., 94 F.2d 969.

Section 716 of Title 18 U.S.C.A. combined with the later enacted sections 723a and 723b furnish the member of a parole board with authority to release prisoners in federal penitentiaries who apply for parole to return to their homes upon such terms and conditions as the board of parole shall prescribe. During the period of parole, the prisoners remain in the legal custody and under the control of the warden of the prison from which they were paroled until the expiration of the original sentence. Section 716, Title 18 U.S.C.A.

Section 717, 18 U.S.C.A. authorizes the issuance of a warrant for retaking a prisoner who has violated the conditions of his parole. This section reads as follows:

"If the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same, for the retaking of such prisoner." [1]

Section 717 was amended in 1930 and again in 1940 by Section 723c so as to invest exclusive authority to issue a warrant for the retaking of a prisoner for violation of parole in the members of the board of parole. However, the conditions on which such a warrant may be issued remain as they are stipulated in the original Section 717.

Section 719, 18 U.S.C.A. provides that a hearing shall be given by the board of parole to a prisoner who has been retaken by a parole warrant. This section reads:

"When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to appear before said Board of Parole, a member thereof, or an examiner designated by the Board. The said Board may then, or at any time in its discretion, revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced." 54 Stat. 692, § 3.

It is noted that Section 717 provides that if a member of the parole board shall have *reliable information* that a prisoner has violated his parole, he may issue a warrant for the retaking of said prisoner.

De Lucia's traverse to the Marshal's return to the writ does not contend that the information upon which the parole board member issued the warrant was not reliable. The traverse alleges substantially, that the members of the parole board did not have any information in respect of a violation of the terms and conditions of De Lucia's parole when the warrant was issued. It alleges that the member of the board who issued the warrant had previously testified before the Congressional Committee that no report or evidence of a violation of parole by De Lucia had been received by the board. And it asserts that the parole warrant was issued solely because the parole board member had been pressed to such action by the legislative committee.

The legal effect of the demurrer filed by the United States Attorney acting on behalf of the parole board member is to say that even if all of the allegations in the traverse are true, nevertheless the detention of De Lucia under the parole warrant is legal and may not be inquired into by this court.

As I view this situation, the question that is presented by the demurrer to the traverse can be divided into two parts: (1) whether the member of the parole board was required under Section 717, as amended, to be in possession of some information relative to violation of the parole before he could issue the parole warrant; and (2) does De Lucia have the right to have determined in this proceeding whether the parole board member had information of some kind in respect of violation of the parole before it issued the warrant or does the warrant itself preclude such an inquiry.

---

[1] Effective September 1, 1948, the sections of Title 18 quoted above were superseded by Sections 4201–4207 of Title 18. The newly enacted Section 4205 deals with the issuance of parole warrants and is worded much differently than the old Section 717, and does not contain the proviso of the old Section 717 with respect to the Board Members having "reliable information."

Since the parole warrant involved here was issued on June 15, 1948, this proceeding involves the older sections of the statute which were in effect on that date and it is not necessary in this proceeding to construe the newly enacted sections which did not become effective until September 1, 1948.

Counsel for De Lucia contends first, that the action of the parole board member in issuing the parole warrant is appropriately reviewable in habeas corpus proceedings, and second, that a review of such action is expressly provided for in Sections 10(a), (b), and (c) of the federal Administrative Procedure Act, Title 5 U.S.C.A. § 1009.

Section 10 of the Administrative Procedure Act reads:

"(a) Rights of review.—Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.

"(b) Form and venue of action.—The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law.

"(c) Reviewable acts.—Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, for any form of reconsideration, or (unless the agency otherwise requires by rule and provides that the action meanwhile shall be inoperative) for an appeal to superior agency authority."

The parties have filed extensive briefs in this matter and arguments were heard by the court on two occasions. From the briefs and arguments, it appears that there is no reported decision which involved the identical questions that are presented in the instant proceeding. However, there are many reported decisions on questions closely related to the ones presented here. I believe that from these decisions can be found the legal principles necessary to the solution of the questions presented in the instant proceeding.

Can the validity of a parole warrant be inquired into in a habeas corpus proceeding before the prisoner has been returned to the penitentiary?

In the case of Clark v. Surprenant, 9 Cir., 94 F.2d 969, the warrant was issued by the parole board for the arrest of Surprenant who had been released on parole. The warrant recited that Surprenant had been sentenced to serve fifteen months and had been released conditionally from the United States penitentiary on April 15, 1936, and that the member of the board issuing the warrant had been presented with reliable information that the prisoner had violated the conditions of his parole. The warrant directed the prisoner's return to the penitentiary. Immediately upon his arrest, Surprenant filed his petition for the writ of habeas corpus. The United States District Court issued the writ and at the hearing it was shown that the parole warrant had been issued only a few hours before the full term of the sentence imposed upon Surprenant had expired. It was also shown that the prisoner had been paroled to a parole adviser in the northern district of Ohio and that one of the conditions of the parole was that the prisoner should not leave that district. Surprenant had, with the advice and consent of his parole adviser, gone from the northern district of Ohio to the southern district of California to live with his father.

At the hearing in the Surprenant case, the parole board contended that the district court was without jurisdiction to inquire into the lawfulness of the custody of

the prisoner under the parole warrant, and that the prisoner first had to be taken to the penitentiary and remain there until the parole board had taken definite action by reviewing the parole before any court could lawfully intervene. There, the Circuit Court of Appeals for the Ninth Circuit held that no such exclusive powers were conferred upon the board of parole. The court also held that the evidence established that the prisoner had not violated his parole; and that since the full term of his sentence had expired, the prisoner was entitled to his release.

 Although in the Surprenant case, the court was influenced by the fact that the full sentence had expired before the hearing, the effect of the decision is to hold that a petition for the writ of habeas corpus is a proper proceeding to inquire into the lawfulness of the detention of a prisoner under a parole warrant before he has been returned to a penitentiary. That case also established the further principle that if in a habeas corpus proceeding it is shown that the prisoner has not violated the conditions of his parole, the parole board cannot cause him to be returned to a penitentiary if the original sentence has expired. In upholding the propriety of the writ of habeas corpus, the court said, 94 F.2d at page 972:

"The office of the writ of habeas corpus is to afford the petitioner a speedy and effective method of securing his release when illegally restrained of his liberty.

"The writ lies in all cases of illegal imprisonment, by commitment, detention, or restraint, for whatever cause, and under whatever pretense. The writ goes to inquire into the cause of imprisonment."

In the same case, Judge Mathews, in a concurring opinion, 94 F.2d at page 974, upheld the right of the district court to conduct an inquiry in a habeas corpus proceeding to determine the lawfulness of a prisoner's detention under a parole warrant:

"Appellant's brief states: 'The question involved is: Did the District Court have jurisdiction to inquire into the lawfulness of custody under a warrant issued by the United States Board of Parole before the Board has an opportunity to give appellee a hearing and take final action?'

"Thus, it is seen, the only question presented to this court is whether or not the District Court had jurisdiction of this case. Appellant contends that the District Court had no such jurisdiction. This contention is without merit. By sections 751–761 of the Revised Statutes, as amended, 28 U.S.C.A. §§ 451–461 [now §§ 2241–2243], District Courts and Judges thereof are expressly empowered 'to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty,' where, as in this case, the applicant 'is in custody under or by color of the authority of the United States,' and thereupon 'to dispose of the party as law and justice require.' Such jurisdiction exists and has frequently been exercised in cases of this character. See, for example, United States v. Anderson, 8 Cir., 76 F.2d 375, cited by appellant, and Christianson v. Zerbst, 10 Cir., 89 F.2d 40. The District Court had jurisdiction of this case."

In the case of Christianson v. Zerbst, 89 F.2d 40, the Circuit Court of Appeals for the Tenth Circuit sustained the revocation of a parole in habeas corpus proceedings brought after the prisoner had been returned to the penitentiary. It appeared that a report of violations of parole had been sent to the parole board by the Childrens' Protective Society of Minneapolis. In construing Section 717, Title 18 U.S.C.A., the court said, 89 F.2d at page 42:

"The report constituted information. A warrant cannot issue in the absence of any information. Its issuance without information would be capricious and without basis in law. But, when information is at hand, its reliability is a matter for the board or the member, as the case may be, to determine; and that determination is conclusive in a proceeding of this kind."

 The foregoing quotation clearly demonstrates that the power granted in Section 717 to issue a parole warrant is limited to instances where the members of the Board of Parole are in possession

of reliable information that the parole has been violated.

Further insight on the limitations of the power that was bestowed by Congress on the parole board in Section 717 of the statute is found in the decision of the Supreme Court of the United States in the case of Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247. In construing the parole statutes in a case involving facts considerably different from those in the case at bar, the Supreme Court said, 263 U.S. at page 197, 44 S.Ct. at page 45:

"Under section 6, the board was authorized at any time, during his term of sentence in its discretion, to revoke the order and terminate the parole, and to require him to serve the remainder of the sentence originally imposed without any allowance for the time he was out on parole."

■ The statement of the Supreme Court in the Corall case that the parole board had power *in its discretion,* to revoke the parole is significant. Discretion involves the exercise of judgment. The exercise of discretion or judgment depends upon facts. Before the exercise of judgment or discretion can lead to the issuance of a parole warrant, some facts are needed. If, in the instant case, the parole board did not have any information in respect of parole violations by De Lucia prior to the issuance of the parole warrant, then under the principles drawn from the authorities above cited, it would not be possible for the parole board to use its discretion or judgment and, in the language of the case of Christianson v. Zerbst, the issuance of a parole warrant would be arbitrary and capricious and without basis in law. As was so clearly stated in the Surprenant case, the purpose of a writ of habeas corpus is to determine whether a person's imprisonment is without basis in law.

■ Keeping in mind the principle stated by the Supreme Court in the case of Anderson v. Corall, that the power to issue a parole warrant lies in the discretion of the parole board or one of its members, the limitation of discretion as distinct from arbitrary will which Congress placed upon the exercise of the power to issue a parole warrant was amplified by the same court in the case of Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. In construing the probation statutes applicable to the facts in that case, the court said, 295 U.S. at page 494, 55 S.Ct. at page 820:

"The judge is without the light whereby his discretion must be guided until a hearing, however summary, has been given the supposed offender. Cf. Snyder v. Com. of Massachusetts, 291 U.S. 97, 116, 54 S.Ct. 330, 78 L.Ed. 674, [683], 90 A.L.R. 575."

■ Although the reliability of the information that is in the possession of the members of the parole board when they issue warrants is to be determined by the parole board exclusively, Christianson v. Zerbst, 10 Cir., 89 F.2d 40, the parole board must have information of some kind in respect of a parole violation before the power to issue a parole warrant can be exercised.

In the case of Rogoway v. Warden, 9 Cir., 122 F.2d 967, at pages 968, 969, which involved proceedings similar to those in the case at bar, the court said:

"The issuance of the warrant for arrest was not improper for, as outlined above, the Parole Board was possessed of some information the reliability of which was within its determination (Christianson v. Zerbst, Warden, 10 Cir., 89 F.2d 40, 42), and conclusive so far as this proceeding is concerned."

The proposition that a parole board member cannot issue a warrant to revoke a parole without having some information on which he has exercised discretion and judgment is further established by the statement of the court in the case of Bass v. Hiatt, D.C., 50 F.Supp. 420. That case involved the right of the attorney general to revoke a parole that had been granted to release a prisoner from the penitentiary for service in the armed forces. In upholding the right to recall the parole under Executive Order Jan. 18, 1941, No. 8641 because such revocation

was within the discretion of the attorney general, the court said, 50 F.Supp. at page 422:

"In the present case the Attorney General, and his authorized representative the Director of the Bureau of Prisons, had the power to recall the parole under Executive Order No. 8641, and *such recall was for cause based upon information in their possession and therefore not an arbitrary or capricious exercise of that power* and whether the conclusion reached by the paroling authority (as a result of which the parole was recalled) was the correct conclusion on the facts before them is not a question for this Court in habeas corpus." (Emphasis supplied.)

The case of Bowers v. Dishong, 5 Cir., 103 F.2d 464, has been cited as an authority for the proposition that the statute places no restraint whatsoever upon the power of a parole board member to issue a warrant for the revocation of a parole. In that case, immediately upon his arrest under the parole warrant the prisoner sought and obtained a temporary writ of habeas corpus. After the marshal filed his return showing that he held the prisoner under a parole warrant the District Judge dismissed the writ because the prisoner sought a hearing on whether a violation of the parole had occurred. The court was of the opinion that such a hearing would oust the jurisdiction of the board of parole and that ruling was upheld on appeal. However, in the instant case, the issue is more fundamental. The traverse to the Marshal's return alleges that the parole board did not have any information of a violation of parole, and that the parole warrant was issued only because the members of the board of parole had been pressed to such action by the Congressional committee without any information of parole violation. The demurrer which was filed to the traverse admits those allegations for the purpose of testing their sufficiency. Therefore, De Lucia is asking the court to inquire into the legality of his detention under a parole warrant which was issued arbitrarily and capriciously and without being based upon information of any kind.

Summing up the legal principles which I believe are fully supported by the cases discussed in this memorandum: (1) a parole warrant can lawfully be issued only in the exercise of discretion based on information. Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247; Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. (2) The parole warrant cannot lawfully issue in the absence of any information *and the issuance of a parole warrant in such circumstances is arbitrary and capricious and not warranted by law.* Christianson v. Zerbst, 10 Cir., 89 F.2d 40; Bass v. Hiatt, D.C., 50 F.Supp. 420. (3) The office of the writ of habeas corpus is to afford the petitioner a speedy and effective method of securing his release if he is unlawfully restrained of his liberty. Clark v. Surprenant, 9 Cir., 94 F.2d 969.

Although there is a presumption of legality in favor of official action in revoking a parole, Bass v. Hiatt, D.C., 50 F.Supp. 420, Harrell v. Aderhold, 5 Cir., 73 F.2d 189, such presumption is overcome in the instant case by the allegations in the traverse that the parole board was without any information whatever in respect of any violation by the petitioner of his conditions of parole and that the parole warrant was issued soley because members of the parole board were pressed to such action by a legislative committee. For the purpose of ruling on the demurrer, those allegations stand as facts. The petitioner had produced witnesses in court to provide proof of the allegations in the traverse when the demurrer was filed.

The court concludes that the duty is mandatory in this proceeding to determine whether the detention of De Lucia under the parole warrant was legal and based upon information in the possession of the member of the parole board who issued the warrant, and therefore,

It is ordered that respondent's demurrer be and is hereby overruled with leave to respondent to file his answer to the traverse within ten days.

■ Turning now the applicability of the federal Administrative Procedure Act to the situation involved here. Does the Act provide for review of detention under a parole warrant? If so, does the Act determine the scope of the review?

Section 10(a) of the Act provides that any person suffering legal wrong because of any agency action shall be entitled to judicial review thereof. If the parole warrant was unlawfully issued, certainly De Lucia's detention thereunder would be a legal wrong. In the words of Judge Sanborn in Whitfield v. Hanges, 8 Cir., 222 F. 745, at page 756, when De Lucia was taken into custody by respondent, the deprivation of his liberty was "present, instant, and continuing." Certainly, so far as the petitioner's immediate liberty was concerned, he suffered legal wrong if the parole warrant under which he was arrested was without any basis in law.

■ Under Section 10(b) of the Act the forms of proceeding for judicial review may be by any applicable form of legal action including habeas corpus. The cases previously discussed demonstrate that habeas corpus is the applicable form of legal action to review the matter presented here. Under this Section of the Act, as the court said in Snyder v. Buck, D.C., 75 F.Supp. 902, at page 908:

"A review may, for example, be had by an action for a declaratory judgment, by an action for a restraining or mandatory injunction, by a petition for a writ of habeas corpus, or some other fitting remedy."

Section 10(c) of the Act provides that every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Whether the arrest of De Lucia under the warrant issued by the member of the Parole Board constituted final agency action within the meaning of Section 10(c) so far as his present liberty was concerned may afford substantial grounds for respondent's contention that such action of the Parole Board would not be final until De Lucia had been returned to the penitentiary, a hearing had been held there, and the Board had decided to revoke the parole. But even if that contention were correct, this section of the Administrative Procedure Act would not prohibit the instant proceeding. The Act does not forbid the use of habeas corpus in any situation. Nor does it forbid the review of an arrest under a parole warrant by habeas corpus proceedings.

■ As the Supreme Court said in construing the provisions of the Selective Service Act, 50 U.S.C.A. Appendix § 301 et seq., in the case of Estep v. United States, 327 U.S. 114, at page 120, 66 S.Ct. 423, 426, 90 L.Ed. 567:

"For the silence of Congress as to judicial review is not necessarily to be construed as a denial of the power of the federal courts to grant relief in the exercise of the general jurisdiction which Congress has conferred upon them."

I incline to the view that the Administrative Procedure Act does not affect the instant proceeding one way or the other. As the authorities hereinabove discussed show, deprivation of one's liberty has always been considered sufficient grounds to support habeas corpus proceedings. The Administrative Procedure Act does not purport to alter this legal practice of such long standing. This view is supported by the statements of the court in the case of United States v. Watkins, D.C., 73 F.Supp. 216, at page 219:

"In other words, the Administrative Procedure Act does not in any way modify the existing forms of proceedings to review final actions of administrative agencies, nor does it create any new remedies if an adequate remedy is in existence."

■ Even if the Administrative Procedure Act does not specifically authorize the instant proceedings to review an arrest under a parole warrant, nevertheless the use of the writ of habeas corpus in testing the legality of any imprisonment has roots deep in our law.

I re-affirm the conclusion previously reached that this proceeding is proper to determine the question of whether the Parole Board or the member who signed the parole warrant had any information in respect of a violation of parole by De Lucia when the warrant was issued.

This is. fortified by the statement of the court relative to the applicability of the Administrative Procedure Act to habeas corpus proceedings in United States v. Carusi, 3 Cir., 166 F.2d 457, at page 461:

"The fact that review has been judge-made out of the concept of due process does not make it any less a qualification of the statute than if the legislators had put the provision in it when the statute was first drawn."