Gene John WOODS

v.

William STEINER, Warden, Maryland House of Correction, Department of Parole and Probation, Paul C. Wolman, as Chairman and Director of Department of Parole and Probation, Joseph A. Mattingly, as Associate, and Theodore J. Hahn, as Associate.

Civ. No. 13851.

United States District Court
D. Maryland.

Aug. 3, 1962.

David F. Albright, Baltimore, Md., court-appointed, for petitioner.

Thomas B. Finan, Atty. Gen., of Md., and Thomas W. Jamison, III, Asst. Atty. Gen., of Md., for respondents.

NORTHROP, District Judge.

The petitioner, Gene John Woods, is a state prisoner seeking the issuance of a writ of habeas corpus. Upon receiving the petition, the court passed an order directing the respondents to show cause why the relief prayed should not be granted. Upon the filing of an answer and amended answer thereto, the court appointed counsel to represent the petitioner at a hearing on the questions raised. This hearing was held on July 20, 1962, at which time the petitioner and respond-ents stipulated and agreed that the controlling facts of the case are as follows.

On December 15, 1956, Woods was arrested and incarcerated in Montgomery County, Maryland, on charges of housebreaking, larceny, and receiving stolen goods. Five days later, he was tried by a jury and found guilty. Upon this verdict Judge Kathryn Lawlor Shook sentenced the petitioner to five years' imprisonment in the Maryland House of Correction, commencing on December 15, the date of his incarceration pending trial. In these proceedings the petitioner had the assistance of counsel, and no direct appeal was taken.

On September 15, 1958, the petitioner escaped from prison. He was retaken and returned to the Maryland House of Correction on January 2, 1959, having been at large for a period of 109 days. Then, after a series of postponements, on December 1, 1959, Woods was tried for this escape in the Criminal Court of Baltimore City before Judge Joseph Allen. Upon entering a plea of "guilty" the petitioner was sentenced to one year's imprisonment, to be served concurrently with the sentence previously imposed in Montgomery County.

■ Thereafter, on March 21, 1960, Woods was placed on parole. Free to move about in the community, the petitioner complied with the terms and conditions of his parole for a period of 224 days, until, on October 31, 1960, he was arrested for the commission of a crime in the State of Virginia. After being found "guilty" of this offense, Woods was held in the custody of the Virginia authorities until February 28, 1962. On the latter date, 709 days after his original release on parole, he was returned to the Maryland House of Correction. In this transfer, Woods waived his right to contest the extradition.[1]

---

1. The strenuous assertion of this fact by the petitioner would appear to be unwarranted. The Order for Release on Parole signed by the petitioner contains this language:

"I hereby accept this parole and agree to comply with all the terms and conditions hereof; and in consideration of the granting to me of this parole, I hereby waive extradition to the State of Mary-

**■■** Following a hearing, the procedural regularity of which is not contested,[2] on April 10, 1962, the state's Board of Parole and Probation revoked its previous parole order, thereby requiring the petitioner to serve the balance of the sentence under which he was imprisoned at the time of his conditional release.

Thus, Woods has been advised that his maximum sentence now will expire on March 12, 1964. Presumably, this date was ascertained by: (1) adding to the original expiration date (December 15, 1961, five years from December 15, 1956) the number of days (109) the petitioner was at large after his escape, to arrive at a new expiration date of April 3, 1962; and (2) adding to this date the number of days (709) the petitioner was out of the Maryland House of Correction on parole.

The primary ground upon which the issuance of the writ is sought is that the computations explained above constitute a deprivation of the petitioner's constitutional rights. It is explicitly urged that this manner of computation is a denial of due process and equal protection that amounts to double jeopardy or cruel and unusual punishment (by extending or increasing the sentence). It is the petitioner's contention that, once the term of sentence was set by Judge Shook, she *a fortiori* also set the expiration date thereof and nothing could be done to alter same. In other words, the petitioner urges that neither his period of escape nor his period of parole justifies extending the term of his imprisonment beyond December 15, 1961.

In oral argument, counsel for the petitioner formulated a somewhat narrower attack on the constitutionality of Woods' incarceration. He suggested that, even if it were proper to add escape and parole time to the prisoner's sentence, the Board of Parole and Probation exceeded its authority in denying him credit for that period of his parole, from March 21 to October 31, 1960, during which he complied with the conditions of his release. Were this the sole ground alleged, the petition would be dismissed by the court because prematurely brought.[3] However, as it is probably the strongest argument that can be made in the petitioner's favor, it will be considered in the discussion to follow.

These various contentions are but the particularized substance of a general claim that, as applied, the Maryland statute under which Woods' parole was revoked is unconstitutional. The statute provides as follows:

"Whenever a prisoner released on parole is retaken, he shall, at the next meeting of the Board of Parole and Probation at the institution designated for the return of the parolee, be given an opportunity to appear before the Board or a member thereof. The Board may then or within a reasonable time thereafter revoke the order of parole and terminate the conditions thereof. *If the order of parole is revoked, the prisoner shall serve the remainder of the sentence originally imposed without credit for the time spent in the community under parole supervision* except that said Board may, in its discretion,

land and expressly agree that I will not contest any effort to return me to the State of Maryland in consequence of my violating any of the terms and conditions of this parole."

2. Under the revocation proceedings sanctioned by the Maryland statute, the parolee first must be given a hearing; however, a formal trial is not required. It has been held by this court (per Thomsen, C.J.) that this procedure is not violative of the Fourteenth Amendment. Martin v. Warden, 182 F.Supp. 391 (D.

Md.1960). An alleged parole violator is entitled to be represented by counsel when he appears at this hearing. Warden v. Palumbo, 214 Md. 407, 135 A.2d 439 (1957).

3. Assuming it was proper to add the petitioner's escape time and his parole time subsequent to the violation to the original expiration date, the petitioner would not be entitled to release on the basis of this narrower point until 224 days prior to his current expiration date, i. e. until July 31, 1963.

grant credit for time spent in the community under parole supervision or for such part thereof as to the Board may seem just and fair under the circumstances. The Board may again parole the returned parolee if, in the opinion of the Board, he merits such consideration." [emphasis supplied] Annotated Code of Maryland, Art. 41, § 115 (1957 Ed.)

The constitutionality of this statute and the particular language important here has been upheld by the Court of Appeals of Maryland upon no fewer than eight occasions. Carolina v. Director, 217 Md. 379, 142 A.2d 602 (1958); Chase v. Warden, 216 Md. 627, 139 A.2d 508 (1958); Woolford v. Warden, 215 Md. 640, 137 A.2d 646 (1958); Phillips v. Warden, 215 Md. 632, 137 A.2d 713 (1958); Clark v. Warden, 213 Md. 641, 131 A.2d 396 (1957); Hall v. Warden, 211 Md. 661, 128 A.2d 280 (1957); Creager v. Warden, 211 Md. 649, 127 A.2d 135 (1956); Williams v. Warden, 209 Md. 627, 120 A.2d 184 (1956). In each of the cases just cited, a parole violator was challenging the discretionary refusal of the Board of Parole and Probation to credit his sentence with time served in the community under parole supervision. In each case, this discretionary action by the Board and the constitutionality of the statute were upheld.

The United States Code Annotated, Title 18, § 4205, provides as follows:

"A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and *the time the prisoner was on parole shall not diminish the time he was sentenced to serve."* [emphasis supplied]

Comparing the state and federal statutes, it is quickly apparent that the latter is the more stringent of the two. The Maryland statute, although it establishes what might be called a presumption that the parolee shall not receive prison credit for time spent in the community under the Board's supervision, confers upon the Board discretionary authority to grant such credit, in whole or in part. On the other hand, the federal statute is conclusive on the point and withholds such power from the federal Board of Parole; in every instance a federal parole violator may not receive credit on his sentence for "street time." Thus, the federal statute and the cases decided thereunder provide a convenient analogy for the determination of the questions presented by the instant petition.

While federal courts have been called upon to construe Section 4205 quite frequently, only upon rare occasions have they been obliged to determine its constitutionality. Upon each such latter occasion, the statute has been found to be valid. Van Buskirk v. Wilkinson, 216 F.2d 735 (9th Cir. 1954); Hedrick v. Steele, 187 F.2d 261 (8th Cir. 1951); Dolan v. Swope, 138 F.2d 301 (7th Cir. 1943). See also Howard v. United States, 274 F.2d 100 (8th Cir. 1960), certiorari denied 363 U.S. 832, 80 S.Ct. 1604, 4 L.Ed.2d 1525; O'Neal v. Fleming, 201 F.2d 665 (4th Cir. 1953); Hall v. Welch, 185 F.2d 525 (4th Cir. 1950); Evans v. Hunter, 162 F.2d 800 (10th Cir. 1947), certiorari denied 332 U.S. 818, 68 S.Ct. 144, 92 L.Ed. 395; Chandler v. Johnston, 133 F.2d 139 (9th Cir. 1943); Story v. Rives, 68 App.D.C. 325, 97 F.2d 182 (1938), certiorari denied 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377. In Dolan v. Swope, supra, the court said (at pp. 303–304):

"In other words, the allowance of the credit for time spent by him outside prison walls in service of his sentence, was conditioned upon continuance of good behavior, and if before expiration of his original sen-

tence he by his own misconduct subjected himself to rearrest, he not only forfeited his good conduct credit for the balance of his sentence (which counsel freely concedes) but he also forfeited his credit for the time already spent on parole. As in the probation cases, such increase of sentence was potentially a part of the original sentence, hence not invalid for violation of the double jeopardy inhibition. It is a part of the disciplinary procedure which the Supreme Court held to be a necessary part of the parole laws. As that Court said in Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 819, 79 L.Ed. 1566, 'Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose.' (Citing Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266.)

"Appellant is not being detained in violation of the Fifth Amendment of the Constitution, and the District Court, therefore, properly discharged the writ of habeas corpus."

In equally vigorous language, the Ninth Circuit, in the Van Buskirk case, supra, likewise found that the operation of this statute does not place a parole violator in double jeopardy. The court also held that the operation of the statute does not constitute a cruel and unusual punishment, as an increase in sentence.

"So long as it does not transcend constitutional limitations, such as the prohibition of cruel and unusual punishment, enactment of *ex post facto* laws and the like, Congress has the power to prescribe such punishment as it may see fit for violation of its valid criminal statutes. If the punishment is imprisonment, Congress may specify how and in what manner the imprisonment shall be served. And any curtailment of punishment, such as allowance of

time off for good conduct, may be coupled with conditions.

"When appellant was conditionally released, he became subject to all the provisions of law relating to parole, one of which was that if he violated his parole he should again be taken into custody and the time spent on parole should not diminish the time he was originally sentenced to serve. The allowance of credit for time served outside the penitentiary on parole status was conditioned on continuance of his good behavior. By his own misconduct he breached the condition and forfeited allowance for time served on parole. When he was again taken into custody he began service of the remaining portion of his sentence which had been provisionally deferred. Such added service, under the statutory conditional release plan, was potentially a part of his original sentence and hence did not increase his sentence nor subject him to double jeopardy." 216 F.2d 735, at p. 738

Finally, in Story v. Rives, supra, it was held that a statute [4] closely related to Section 4205 was not violative of the Constitution as a bill of attainder.

We are of the opinion that these cases, all of which either directly or inferentially uphold the constitutionality of the federal statute quoted above, are dispositive of the constitutional objections raised in this petition.

We must deny that, when a judge sets the length of sentence and the date upon which its service is to commence, he *a fortiori* sets the termination date of the sentence as well. The responsibilities of sentencing weigh heavily upon a judge; he considers with great caution and care the impact that his sentence will have upon the life of the person upon whom sentence is to be imposed. And the possibility of parole is one matter that never eludes his attention. Just as it is so often uppermost in the mind

4. 18 U.S.C.A. § 4164, previously § 716b of the same title.

of the prisoner, so is it in the mind of the judge. In legal contemplation, the terms of the apposite parole statutes are implicit—and, oftentimes, quite explicit—in the pronouncement of sentence. Federal judges, as must be the judges of Maryland, are fully aware that a sentence they impose might be interrupted by parole, that the conditions of parole might be violated, and that this violation might extend the parolee's imprisonment beyond an expiration date arrived at by the simple arithmetical process of adding the term of the sentence to the date upon which its service is to commence. Simply stated, the imprisonment contemplated in the imposition of sentence is confinement in fact. Howard v. United States, supra, 274 F.2d at p. 103.

The petitioner rests heavily upon the case of Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923), where Mr. Justice Butler said:

> "While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment." 263 U.S. 193, at p. 196, 44 S.Ct. at p. 44

In aphoristic terms, Woods contends that parole is prison, and a paroled prisoner cannot be deprived of good conduct time once he earns it. However, while in some cases it might be quite accurate to say that parole "is in legal effect imprisonment," it clearly is not the equivalent of legal imprisonment in every case. For instance, in the interesting case of Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), the Supreme Court held that a prisoner's accepting parole reduces to mootness his previously filed petition for a writ of habeas corpus. In

accord is Jones v. Cunningham, 294 F.2d 608 (4th Cir. 1961), certiorari granted 369 U.S. 809, 82 S.Ct. 687, 7 L.Ed.2d 611 (appeal pending on the question of "mootness"). Also,

> "We deem it worthy of note that in spite of the language of Anderson v. Corall, supra, upon which appellant relies, the Supreme Court found nothing inconsistent between it and its ruling that the Parole Board was authorized, under the statute, to terminate the parole and require the prisoner to serve the remainder of the sentence originally imposed without any allowance for the time he was out on parole, precisely as in the case at bar. Appellant apparently considers this fact irrelevant for the reason that no constitutional question was presented. We do not agree." Dolan v. Swope, supra, at p. 303

Thus, the actual holding in the Anderson case, supra, is itself a qualification of the language upon which the petitioner relies. In that case, the petitioner Corall was sentenced to three years' imprisonment in 1914 and was placed on parole about two years later. Shortly thereafter, a warrant was issued by the Parole Board for his retaking as a parole violator. However, prior to being retaken, Corall was convicted of another federal offense and sentenced therefor. Because of this subsequent incarceration, the Board's warrant was not served and the original parole order was not revoked until almost three years after the expiration date of the original sentence. The Supreme Court validated this procedure, and the effect of its holding was to deny Corall credit, not only for the time (presumably including good conduct time) he spent on parole, but also for the time he spent in prison under the second sentence.[5] See Zerbst v. Kidwell,

5. The Fourth Circuit consistently has adhered to the holding in Anderson v. Corall, supra. Hockaday v. United States, 248 F.2d 950 (4th Cir. 1957); Bragg v. Huff, 118 F.2d 1006 (4th Cir.

1941); United States ex rel. Nicholson v. Dillard, 102 F.2d 94 (4th Cir. 1939); Jarman v. United States, 92 F.2d 309 (4th Cir. 1937); United States ex rel. Rowe v. Nicholson, 78 F.2d 468 (4th

304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938).

Furthermore, it would appear that constitutional arguments such as those forwarded by the petitioner are largely precluded by the fact that parole, like probation, is solely a matter of legislative grace and not a constitutional right. Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1240 (1935); Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); Latham v. United States, 259 F.2d 393 (5th Cir. 1958); Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954); Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1950), affirmed 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639, rehearing denied 340 U.S. 907, 71 S.Ct. 277, 95 L.Ed. 656; United States ex rel. Holderfield v. Ragen, 170 F.2d 189 (7th Cir. 1948), certiorari denied 336 U.S. 906, 69 S.Ct. 485, 93 L.Ed. 1071; Fleming v. Tate, 81 U.S.App. D.C. 205, 156 F.2d 848 (1946); United States ex rel. Bongiorno v. Ragen, 146 F.2d 349 (7th Cir. 1945), certiorari denied 325 U.S. 865, 65 S.Ct. 1194, 89 L.Ed. 1985. Of course, the exercise of legislative authority in this area is not free entirely of constitutional restrictions. For instance, it might be improper for the legislature of a state to enact a statute which subjected parole violators to a period of actual incarceration in excess of the term originally imposed. Such is not the case here. It is true that, under the parole statute in question here, a prisoner might remain in the *custody* of state authorities for a period in excess of the term of sentence originally imposed; however, it is not true that he also might be *incarcerated* for a period in excess of that term.

The purpose of parole legislation is to permit a deserving prisoner to leave prison before the expiration of his term and to serve out its balance while living in the community. Parole is an extension of the prison walls, an institution intended to achieve maximum prisoner rehabilitation at a minimal cost to the state. And, because parole is a matter of legislative grace, its being granted may be coupled with such conditions as reasonably might be expected to assure its success. Van Buskirk v. Wilkinson, supra. One such condition, imposed by both the federal and Maryland governments, is that, if a prisoner violates any other condition of his parole, he will be subject to retaking, and his parole time (including good conduct time) may not diminish the period of his incarceration under the original sentence. On the other hand, if a federal or Maryland prisoner fulfills the conditions of his parole throughout the entire period of his release, he is entitled to credit on his sentence with the same legal effect as imprisonment. In this sense, the language of Mr. Justice Butler, in Anderson v. Corall, supra, is correct.

Woods was fully aware of the conditions of his parole, and the credit provision in particular [6] when he accepted the release granted him by the Maryland Board. If he found these conditions onerous, he was free to refuse his parole and remain in prison, as his counsel has conceded many Maryland prisoners do. But, once having accepted his parole, he also had to accept as a *quid pro quo* there-

---

Cir. 1935); certiorari denied 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405; Stockton v. Massey, 34 F.2d 96 (4th Cir. 1929), certiorari denied 281 U.S. 723, 50 S.Ct. 239, 74 L.Ed. 1141.

6. Condition Three (3) of the Order for Release on Parole signed by the petitioner provides as follows:

"That, upon his violation of any of the terms and conditions of this parole, the parolee will be returned to the institu-

tion from which he was paroled, and if the order of parole is revoked, the prisoner shall serve the remainder of the sentence originally imposed without credit for the time spent in the community under parole supervision; except that said Board may, in its discretion, grant credit for time spent in the community under parole supervision or for such part thereof as to the Board may seem just and fair under the circumstances."

for the condition that he forfeit his parole time—that it not serve to reduce his imprisonment—should he be lawfully retaken as a parole violator.

"When the Board directs the forfeiture of a good time allowance for breach of condition and the serving out of the original sentence, it does not add to the sentence imposed by the trial judge, but merely treats the service of the remaining portion of the sentence as having been deferred by the release accorded the prisoner. *The fact that the term of the sentence is thus extended beyond the date when it would have expired originally is certainly not a matter of which the prisoner can complain; for the extension results from the conditional release which has been accorded him and which he has accepted.* The service of that portion of the sentence has merely been deferred by the conditional release. There is manifestly nothing in any of this violative of any provision of the Constitution." [emphasis supplied] Hall v. Welch, supra, 185 F.2d at p. 527

The petitioner's return to prison was effectuated by the revocation of a release that was only conditional in the first place. And, for this revocation, Woods has no one to blame but himself; it was his own doing, brought about by a rather blatant violation of his parole obligations.

■ There is no double jeopardy that can be said to exist under these circumstances, for the prisoner has not been retried for his original offense. The Maryland legislature has not delegated to the Board of Parole and Probation the judicial function of imposing punishment for crime; this was fully performed by Judge Shook. Rather, the Board has been given the duty of administering and supervising this punishment, including the granting and revoking of parole—matters wholly contemplated in the initial imposition of a prison term.

■ Nor can the procedure established by the Maryland statute be said to constitute, in this case, a cruel and unusual punishment. The petitioner's sentence, the legality of which is not contested, has not been increased or extended. It merely was interrupted and deferred by the fact of his conditional release.

■ Nor is there merit to the contention that the Maryland statute is violative of the equal protection provisions of the Constitution. It is no less lawful, in this regard, than the so-called recidivist or habitual offender statutes. See Carlesi v. New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914).

Nor has the petitioner been denied either procedural or substantive due process.

Any defects which the Maryland statute might possess are such that can be cured only by the state legislature, for it is constitutionally sound. The petitioner complains that the Maryland forfeiture statute embodies what his counsel has called "the yo-yo theory of prisoner rehabilitation." [7] However, a statute such as this seems essential to the orderly and effective administration of criminal justice. How perverted it would be to abolish such provisions: then, a parolee could flee the jurisdiction and immunize himself from all of the consequences of his act, if only he succeeds in

7. What is alluded to is the possibility of an elaborate succession of confinements and releases. Theoretically, a prisoner could be retained in the custody of the appropriate state authorities for a period in excess of three times the length of the sentence imposed. However, it is quite unlikely that such a case should ever occur. To achieve this peculiar end it would be necessary for a somewhat gullible parole board to grant the prisoner a release about half a dozen times, and the prisoner would have to oblige by deferring his violations until the end of his parole period in each instance. Of course, in no case would the prisoner ever be confined in prison under the original sentence for a period in excess of the term of the original sentence.

evading arrest until after the expiration date of his original sentence! See Gholston v. Boles, 4 Cir., 305 F.2d 162. To paraphrase Mr. Justice Black,[8] if the Maryland statute should be construed as the petitioner contends, parole might be more reluctantly granted, contrary to the broad humane purpose of the state to grant relief from imprisonment to deserving prisoners.

 Next, we come to the matter of Woods' escape. We think his contentions in this regard are disposed of adequately by the remarks of Mr. Justice Butler, in the Anderson case, supra (at p. 196, 44 S.Ct. at p. 44):

> "Mere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence. Escape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term. * * *"

As a matter of common law, constitutional law, and common sense, a prisoner is not entitled to credit on his sentence for those periods when he willfully and voluntarily absents himself from prison without authorization.

 Last, we must consider a question that logically should have been considered first: Do the facts of this case support the jurisdiction of this court? It appears that the petitioner has not previously sought relief in the courts of Maryland. Accordingly, the respondents have moved for a dismissal on the ground

that Woods has failed to meet the requirements of 28 U.S.C.A. § 2254.[9] However, even if it is assumed—as probably is the case—that the petitioner has not sought any form of relief in the state courts, there remains the question of whether or not the state provides any procedure whereby the issues raised here could have been raised there.

At the outset, it must be noted that Maryland's Uniform Post Conviction Procedure Act (U.P.C.P.A.)[10] is exclusively procedural in effect and does not create new grounds for the granting of post conviction relief; it covers, but does not extend, those forms of procedure available to a prisoner prior to its enactment in 1958. Rice v. Warden, 221 Md. 604, 156 A.2d 632 (1959); Jordan v. State, 221 Md. 134, 156 A.2d 453 (1959); Coleman v. State, 221 Md. 30, 155 A.2d 649 (1959); State v. D'Onofrio, 221 Md. 20, 155 A.2d 643 (1959). As a petition of the same substance as that presented here has never been brought in the Maryland courts under the U.P.C.P.A., we must turn to those cases decided before its enactment.

It is quite clear that the petitioner could not have had entertained by the state a petition for a writ of error coram nobis, in which were alleged the matters here presented, as they involve issues of law only. Madison v. State, 205 Md. 425, 432, 109 A.2d 96 (1954). Likewise, the Court of Appeals of Maryland has held that a petition for the issuance of a writ of mandamus will not lie to compel the Board of Parole and Probation to grant a parole violator credit for time spent on parole. Carolina v. Director, supra.

---

8. Speaking for the Supreme Court in Zerbst v. Kidwell, supra, 304 U.S. at page 363, 58 S.Ct. at page 874.

9. 28 U.S.C.A. § 2254. State custody; remedies in State Courts
 "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective proc-

ess or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

10. Annotated Code of Maryland, Art. 27, § 645A et seq. (1957 Ed. 1961 Supp.)

The only procedural form conceivably available to the petitioner in the state courts is a petition, similar to the one here presented, for the issuance of a writ of habeas corpus. However, the availability of this remedy, if the pun will be pardoned, is riddled with problems.

First, the Court of Appeals of Maryland frequently has held that the discretionary refusal of the Board of Parole and Probation to grant credit for time spent in the community is not reviewable in a habeas corpus proceeding. Smouse v. Warden, 215 Md. 654, 139 A.2d 345 (1958); Woolford v. Warden, supra; Leeson v. Warden, 212 Md. 643, 129 A.2d 88 (1957); Schwartz v. Warden, 212 Md. 637, 128 A.2d 903 (1957); Forrester v. Warden, 207 Md. 622, 114 A.2d 44 (1955).

Second, in the many cases in which the Court of Appeals has held constitutional the statute challenged here, it has assiduously avoided resolving the question of whether or not such an issue even could be raised properly in a habeas corpus proceeding. To quote from one of these cases, which is typical of all of them:

"*Assuming, without deciding, that the petitioner could raise this question on habeas corpus,* this Court previously has held that the failure of the Board of Parole and Probation in the exercise of its discretion to grant full credit does not deprive him of any constitutional rights." [emphasis supplied] Hall v. Warden, supra, 211 Md. at p. 662, 128 A.2d at p. 280

Third, because the U.P.C.P.A. abolishes appeals in all habeas corpus cases and because the lower courts of Maryland are obliged to follow the precedents established by the highest court of the state, the possibility that a petition such as this would be considered in detail in the lower state courts and decided favorably to the petitioner is remote to the point of non-existence. This is singularly so because the lower court to whom such a petition would be addressed might settle adversely to the petitioner the unresolved question of whether the issues raised could be reached through habeas corpus proceedings.

It is impossible to say, with any degree of confidence and honesty, "that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C.A. § 2254. From the tenor of those cases such as Hall v. Warden, supra, one's hunch would be that no such process exists; yet, the Court of Appeals consistently has declined to say so. On the other hand, if a corrective process does exist, there is only slight reason to suspect that it is inadequate. Of course, an easy solution would be to dismiss the petition and compel the petitioner to pursue through the courts of Maryland what very well might only be a will-o'-the-wisp. However, we are constrained from following such a course, or requiring the petitioner to do so. Under the circumstances, this Court feels obliged to state to the petitioner now what it would say were the petition dismissed solely for jurisdictional reasons and, as would have been most likely, the petitioner returned here after a fruitless attempt to gain a hearing in the courts of the state. This court has had "jurisdiction" over this matter for a period in excess of two months, counsel has been appointed, and a hearing has been had. In the exercise of its discretion and with all deference and respect for the jurisdiction of the courts of Maryland, this court has chosen to decide the petition upon its merits. Special circumstances appear to the court to warrant this.

Having considered the petition upon its merits, it has been denied for the reasons above stated.