Claude C. CLIFTON, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 67–H–693.

United States District Court
S. D. Texas,
Houston Division.

Aug. 7, 1968.

McPhail, Wilson & Gee, Sam R. Wilson, Houston, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., of Texas, and Allo B. Crow, Jr., Asst. Atty. Gen., Austin, Tex., for respondent.

Memorandum and Judgment:

INGRAHAM, District Judge.

Claude C. Clifton, a prisoner in state custody, filed a petition for writ of habeas corpus in this court on September 8, 1967. All relevant facts have been

stipulated and both parties have submitted briefs of the law. The cause is now before the court for decision on the merits. The petitioner has unquestionably exhausted his state remedies.

It being undisputed that petitioner's parole has been revoked and that he is currently incarcerated in the Texas Department of Corrections, this court's memorandums of April 2 and May 8, 1968, are hereby vacated.

## I.

■ The facts giving rise to the contentions presented by the instant petition are as follows: On January 27, 1931, the petitioner was convicted by jury verdict in the District Court of Wharton County, Texas, of the offense of robbery by firearms and was sentenced to imprisonment for a term of twenty-five years. The conviction was affirmed by the Texas Court of Criminal Appeals. Fuller v. State, 118 Tex. Crim. 586, 37 S.W.2d 1037 (Tex.Cr.App. 1931). After serving approximately five months of his sentence, petitioner escaped from the penitentiary. While an escapee, a grand jury returned an indictment in Cause No. 9346 to the District Court of McLennan County, Texas, charging petitioner with having committed the offense of theft of property of a value over $50.00. (felony theft.) [1] A jury found petitioner "guilty" of this offense on October 1, 1932, and his punishment was assessed at ten years in the penitentiary. The language of the McLennan County judgment:

> "It is further ordered by the Court that the sentence in this case begin at and run from the expiration of a 25 year sentence in Wharton County, Texas, against this defendant."

means clearly and unambiguously that the sentence was to run consecutive to the Wharton County judgment. The Court of Criminal Appeals affirmed the McLennan County conviction on March

8, 1933. Clifton v. State, 58 S.W.2d 90 (Tex.Cr.App.1933).

On July 11, 1941, petitioner was granted a six months reprieve by Governor's Proclamation No. 2954. The reprieve provided that if further clemency was desired, application therefor should be filed with the Board of Pardons and Paroles not later than ten days before the expiration of the reprieve. Upon the recommendation of the Board of Pardons and Paroles, petitioner was subsequently granted one year extensions on four separate occasions, to-wit, January 5, 1942, November 27, 1942, March 22, 1944, and December 19, 1944. Finally, on January 4, 1946, the Governor, acting again upon the recommendation of the Board of Pardons and Paroles, granted petitioner a conditional pardon. While admitting that he took advantage of this pardon for the purpose of remaining at liberty, petitioner nevertheless contends that he did not accept the conditional pardon.

In the latter part of 1946, petitioner pleaded guilty in the United States District Court for the Western District of Arkansas to the offense of Post Office burglary. Petitioner was convicted upon his plea of guilty and given a ten-year sentence.

On January 17, 1947, while petitioner was in custody of the federal authorities in Arkansas, the Governor of Texas revoked the conditional pardon which had been granted only a little over a year before. The proclamation revoking the pardon recited that the Governor's action was occasioned by the Arkansas conviction. The Texas prison authorities learned no later than February 10, 1947, that petitioner was in custody in Arkansas pursuant to federal charges. On that date a state warrant was filed with the Sheriff at Jonesboro, Arkansas; however, no detainer was issued. Shortly after June 10th, the Texas authorities were notified that petitioner

---

1. Facts regarding petitioner's escape were found by the United States District Court for the Eastern District of Texas in Clifton v. Beto, Civil No. 4402 (E.D. Tex.1965).

had been received at the United States Penitentiary in Atlanta, Georgia, to begin serving the ten-year sentence imposed by the Arkansas federal court. In spite of being so notified, the Texas authorities made no effort to place a detainer on the petitioner at that time, nor did they take any other action to secure his return to Texas.

After serving six years and one month of the ten-year sentence, petitioner was given a conditional release in 1953. Because of the inaction on the part of the Texas authorities, petitioner became a free man, subject only to the usual conditions of parole. He retained this status for somewhat over three years.

In 1957 petitioner reverted to his old ways and he was convicted in a Mississippi state court of the offense of burglary. As a result of this conviction, he received a six-year sentence. Officials at the Mississippi penitentiary subsequently informed the Texas authorities that petitioner was in their custody. At that time, and for the first time since the revocation of the conditional pardon, Texas filed a detainer. The detainer was not effective, however, since the federal authorities had filed a prior detainer based on petitioner's violation of his conditional release agreement. Upon completion of the Mississippi sentence and in response to the federal detainer, petitioner was delivered into federal custody.

After learning that petitioner had been returned to federal custody, in March, 1962, the Texas authorities caused a detainer to be placed on him. Consequently, when petitioner was released from the Atlanta penitentiary in July, 1964, he was delivered to the Texas Department of Corrections where he was imprisoned to serve out the remainder of the two sentences meted out over thirty years before.

## II.

Petitioner advances the following three grounds in support of his prayer for release:

(1) The ten-year sentence imposed by the District Court of McLennan County is invalid because in its attempt to make that sentence run consecutive to the one imposed in the Wharton County case, the court did not adequately describe either the prior sentence or the petitioner himself.

(2) Petitioner is entitled to credit for the time he spent out of custody pursuant to the reprieve, its extensions and the conditional pardon. Accordingly, petitioner has fully served the sentence imposed in the Wharton County case.

(3) Respondent's insistence that petitioner serve the unexpired portions of the 1931 and/or 1932 sentences constitutes a denial of due process of law under the Fourteenth Amendment because of the seventeen year lapse between the date the conditional pardon was revoked and the time petitioner was finally taken into custody in 1964.

■■ The first two grounds relied on may be disposed of summarily.[2] Petitioner's contention regarding the alleged invalidity of the McLennan County sentence was presented to the Court of Criminal Appeals in a state habeas corpus proceeding and was rejected by that court. Ex parte Clifton, 415 S.W.2d 661 (Tex.Cr.App.1967). While this court is not bound by the state court's conclusions of law, I am nevertheless of the opinion that the Court of Criminal Appeals' decision on this point was correct. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Brown v. Allen, 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Accordingly, this court holds that the Mc-

---

**2.** At the time the petition for writ of habeas corpus was originally filed in this case, McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), was still good law. The first two grounds advanced probably represent an attempt by the petitioner to satisfy the requirements of McNally. On May 20, 1968, the Supreme Court overruled McNally in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). This court's refusal to grant relief on the basis of either of petitioner's first two grounds is, therefore, not dispositive of the case.

Lennan County sentence was adequately descriptive and thus valid. Cf. Thomas v. Page, 368 F.2d 180 (10 CA 1966); Bevins v. Klinger, 365 F.2d 752 (9 CA 1966).

Petitioner's second ground, i. e., that he is entitled to credit for the time spent out of custody, is likewise without merit. It is well settled that a prisoner who is pardoned or paroled may be compelled to serve, without violation of his constitutional rights, all of the time he was out of custody if he violates the conditions of his release.[3] It is equally well settled that if a prisoner accepts his freedom under a conditional pardon, he is bound by the terms thereof.[4]

Petitioner's final and more substantial contention is that his present incarceration under the 1931 and 1932 sentences is violative of his rights as guaranteed by the due process clause of the Fourteenth Amendment. The only issue presented by this contention is whether the Court of Appeals' recent decision in Shields v. Beto, 370 F.2d 1003 (5 CA 1967), is controlling under the facts of the instant case. If Shields controls, the writ must be granted.

In Shields the petitioner was convicted of two felonies in 1933 and was sentenced to ten years in each case, the sentences to run consecutively. Subsequently, but during the same year, Shields was convicted of a third felony and sentenced to an additional term of twenty years to run consecutively to the first two convictions, thus making a total of forty years to serve. After serving slightly more than a year of his forty year term, Shields was granted a sixty day "furlough" by the Governor of Texas. Texas authorities notified their Louisiana counterparts of the "furlough" since Shields had escaped from the Louisiana penitentiary prior to the Texas convictions. Rather than accept the "furlough", Shields signed a waiver of extradition and was returned to the Louisiana penitentiary. He was paroled in 1944 and in 1948 supervision was removed. At no time did Texas place a detainer on Shields and he remained a free man from 1944 until 1960 when he was convicted in a Tennessee federal district court. Upon his release from the federal penitentiary in 1962, Shields was returned to Texas to stand trial for passing a forged instrument. He was convicted of this offense and sentenced to two years plus the time not served as of the date of his "furlough" on the 1933 convictions.

The Court of Appeals phrased its holding in the Shields case in the following terms:

"Thus we hold that the extraditing of Shields to Louisiana authorities and the release by Texas of the prisoner before expiration of his sentence constituted a waiver of jurisdiction over Shields, especially where the surrendering sovereign (Texas) showed no interest in the return of the prisoner, either by agreement between the sovereigns, by detainer, or any other affirmative action taken by it following his release in Louisiana." 370 F.2d at 1005–1006.

It is at once evident that the major point of distinction between the Shields case and the instant case is that in the case at bar the State of Texas did not surrender the petitioner to another sovereign before the expiration of his sentence. In the case sub judice the petitioner was granted his liberty upon the conditions that he abide by the law and report regularly to his Parole Board. Petitioner ignores this distinction in his brief and focuses instead on a sentence

---

3. Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); Clark v. Blackwell, 374 F.2d 952 (5 C.A.1967); Van Horn v. Maguire, 328 F.2d 585 (5 C.A.1964); Johnson v. Wilkinson, 279 F.2d 683 (5 C.A.1960); Joyner v. Moore, 233 F.Supp. 309 (S.D.Tex.1964).

4. O'Callahan v. Attorney General, 338 F. 2d 989 (1 C.A.1964), cert. denied, 381 U.S. 926, 85 S.Ct. 1563, 14 L.Ed.2d 685 (1965); Fox v. Sanford, 123 F.2d 334 (5 C.A.1941); Woods v. Steiner, 207 F. Supp. 945 (D.Md.1962).

subsequent to the one quoted above where the court wrote:

"The lack of interest in Shields by the State of Texas from the date he was released to the Louisiana authorities in 1934 until 1962 when again convicted in Texas, a lapse of more than 28 years, was equivalent to a pardon or commutation of his sentence and a waiver of jurisdiction." 370 F.2d at 1006.

Reduced to its essentials, petitioner's argument is that the state's inaction from 1941 when he was given his reprieve until 1957 when the prison authorities first attempted to file a detainer is, by itself, sufficient to require his immediate release. After giving the matter careful consideration, the court is of the opinion that petitioner's contention must be rejected.

■ First, the court is not convinced that the substantial factual distinction between the nature of the release in Shields and the release in the present case can be casually ignored. The Court of Appeals in Shields placed great emphasis on the fact that the petitioner was surrendered to the Louisiana authorities. The majority of the cases cited by the court deal with the situation where a prisoner is transferred to the prison authorities of another state before completion of his sentence. The important point is that unlike Shields the present petitioner knew that his release was conditional and he had every reason to anticipate that he would be required to serve out his old sentences should be subsequently commit another criminal offense. In short, the petitioner was not misled or deceived concerning the nature of his release. It is the opinion of the court that the factual distinction between Shields and the instant case is relevant because the existing circumstances tend to mitigate any unfairness in making petitioner serve out his old sentences.

Assuming, however, that the factual distinction between the cases is not relevant, the court is nevertheless of the view that the state's inaction in this case was not such as would render its insistence that petitioner serve the remainder of the 1931 and 1932 sentences violative of due process. In Ex parte Bugg, 163 Mo.App. 44, 145 S.W. 831 (Mo.App.1912), the court noted that each case of this type should rest upon its own peculiar facts. In the case at bar the state exhibited a lack of interest in the petitioner from 1947 until 1957. Before 1947 the state had no reason to seek to regain custody of the petitioner since he had apparently abided by the conditions of his release. After 1957 the state either attempted to place or did place a detainer on the petitioner each time it had the opportunity to do so. Thus this case involves a ten-year lapse during which the state exhibited a lack of interest as compared with a twenty-eight-year lapse in Shields. The vitiating unfairness in Shields is further evidenced by the fact that Shields was a free man for almost sixteen years. In the present case the petitioner was at large for somewhat over three years after respondent had cause to place a detainer on him. (See supra p. 1386).

In determining whether the precepts of fundamental fairness have been traduced, however, more is involved than mere numbers. Viewed realistically, the only time the State of Texas failed to act when it should have done so was after the Arkansas conviction in 1947. While the requirements placed upon the states by the due process clause are admittedly stringent, the standard is not one of absolute perfection. Cf. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). The state's one mistake in 1947 when considered in light of its subsequent diligence should not be held to constitute a commutation of petitioner's sentence or a waiver of jurisdiction over him. Cf. Ex parte Bugg, supra, at 832.

### III.

For the reasons above mentioned, the petition for writ of habeas corpus should be and hereby is denied. This is a final judgment.