## UNITED STATES ex rel. TOMASELLO v. SMITH, United States Marshal.

### No. 1035.

District Court, E. D. Pennsylvania.

June 11, 1943.

Grace Cohn, of Philadelphia, Pa., for relator.

Joseph E. Gold, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., for defendant.

BIGGS, Circuit Judge.

The relator, Louis Tomasello, pleaded guilty to an indictment (No. 7884 March Sessions 1938) returned to the District Court of the United States for the Eastern District of Pennsylvania by a grand jury which charged him, along with other persons, with having violated the provisions of

Section 37 of the Criminal Code, 18 U.S.C.A. § 88, by engaging in a conspiracy to commit offenses against the Internal Revenue Laws of the United States. The indictment in fact charged one conspiracy and possessed but one count so that the maximum sentence which could have been imposed upon the petitioner was a fine of $10,000 and imprisonment for not more than two years. Cf. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed.——.

On June 22, 1939, the relator was sentenced by the District Court of the United States for the Eastern District of Pennsylvania to six months imprisonment and to probation for three years. That portion of the sentence which related to imprisonment was suspended. Within a short time after sentence and well within the period of two years following his sentence he went to Georgia without the permission of his probation officer and violated the terms of his probation in other respects.

On March 13, 1941, the probation officer of the District Court for the Eastern District of Pennsylvania filed a petition to that court praying that a bench warrant issue for the arrest of the relator. The warrant issued and was sent to the Marshal of the District Court for the Middle District of Georgia for execution. This officer reported that he could not find the relator within that district and returned the warrant non est inventus. On May 3, 1943, almost eleven months after the end of the maximum period to which the relator could have been sentenced, the Probation Officer of the District Court of the Eastern District of Pennsylvania, learning where the relator was petitioned the court again for a bench warrant. In a statement attached to this petition the Probation Officer referred to the previous petition, to the earlier warrant and to the attempts made to apprehend the relator. The court thereupon issued a second bench warrant and the relator was arrested and brought before the court. The judge who had previously sentenced the relator revoked his probation and imposed a sentence of six months imprisonment upon him. An application for a writ of habeas corpus followed and a writ duly issued on the application.

The question presented turns upon the construction of the last sentence of Section 2 of the Act of March 4, 1925, c. 521, 43 Stat. 1260, 18 U.S.C.A. § 725, which provides in part that "At any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed." It is the contention of the relator that since the bench warrant of May 3, 1943, upon which he was arrested, was issued after the maximum period for which sentence could have been originally imposed, the court was without power to revoke his probation and to impose a sentence of imprisonment upon him. The respondent for his part contends that the issuance of the bench warrant of March 13, 1941, "tolled" the limitation of time imposed by the statute.

Is it necessary that the warrant be served, the probationer be arrested and brought before the court before the expiration of the maximum period prescribed by the statute? The answer to a part of this question is suggested by the opinion of Judge Abruzzo in United States v. Thompson, D.C., 47 F.Supp. 150.

In that case, a warrant was issued for a parole violator within the term of the prisoner's sentence but the warrant was executed and the probationer was arrested, was brought before the court, and was sentenced to imprisonment after the expiration of the term of the sentence. Upon application for writ of habeas corpus, the parole violator contended that the execution of the warrant within the term of the sentence was as necessary as the issuance of the warrant within that period. The pertinent statute, Section 4 of the Act of June 25, 1910, c. 387, 36 Stat. 820, 18 U.S.C.A. § 717, gives authority to the Board of Parole to issue a warrant for the retaking of the prisoner who has violated his parole "at any time within the term or terms of the prisoner's sentence * * *." Relying largely on the decisions of the Supreme Court in Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247, and Zerbst v. Kidwell, 304 U.S. 359, 360, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808, because the parole violator's own misconduct had prevented the completion of his original sentence, Judge Abruzzo held that the failure to complete the sentence continued the authority of the Parole Board over the violator until the sentence had been completed and had expired. Judge Abruzzo said, 47

F.Supp. at page 153. "Section 717 of Title 18 U.S.C.A., gives authority to the Board of Parole to issue a warrant within the term of the relator's sentence but it is silent as to the time when the warrant must be served. Decisions imply that once the warrant is issued within the prescribed time, to wit, the term of the sentence; the requirements of the statute have been adhered to. The execution of the warrant is not the prevailing or decisive factor."[1]

■ While the statute before me is not worded as is the act which was before Judge Abruzzo, none the less the intent is plain. Congress intended in respect to the probation statute that a district court of the United States should issue the warrant within the maximum period for which the defendant might have been originally sentenced. It was the intention of Congress under the parole statute to authorize the warden of a penitentiary to issue his warrant for the retaking of the prisoner within the term of the sentence. Under both statutes the pertinent jurisdictional fact is the timely issuance of the warrant. In neither statute is a time limit imposed upon the subsequent disposition of the retaken prisoner.

■ My conclusion in this respect is strengthened by evidence within the statute before me. The clause " * * * within the maximum period for which the defendant might originally have been sentenced * * * " modifies the phrase which immediately follows it, " * * * the court may issue a warrant * * * " and not the remaining portion of the sentence. Congress indicated that there should be three successive steps; the issuance of the warrant, the arrest of the defendant, and his appearance before the court. A time limitation is imposed only upon the first step. I conclude that a court is not deprived of the power to resentence the defendant if the warrant has issued within the maximum period prescribed by the statute even though the execution of the warrant and the appearance of the prisoner before the court is beyond that period.

If the warrant upon which the relator in the case at bar was apprehended had issued within the maximum period prescribed by the statute under consideration, I conceive that there would be no doubt but that the court had power to revoke the sentence of probation and impose the sentence of imprisonment upon him. Indeed the relator concedes this. But, as I have indicated, the relator was not arrested upon the warrant of March 13, 1941, but upon one which issued May 3, 1943. Does this make a difference? There is authority to the contrary in the case of United States v. Farrell, 8 Cir., 87 F.2d 957. This is the only reported decision that I have been able to find on this question.

In the Farrell case the Circuit Court of Appeals for the Eighth Circuit construed the very statute which I have before me. Farrell had pleaded guilty to an indictment charging him with violating the National Motor Vehicle Theft (Dyer) Act, 18 U.S.C.A. § 408, and was liable to a sentence of imprisonment for five years. On the 2nd day of June, 1928, he was put on probation for a period of five years. Shortly after the imposition of this sentence Farrell left the jurisdiction of the District Court for the District of Minnesota, the court which had sentenced him, and went to Wisconsin where he committed a burglary. He was sentenced for this crime to ten years in a Wisconsin state prison. The District Court for the District of Minnesota, without bringing Farrell before it, without notice and without a hearing, entered an order revoking the probation and reinstating the sentence of five years imprisonment and providing that the sentence so reinstated should commence upon Farrell's release from the Wisconsin prison. Pursuant to the order of the court a commitment was issued directing the marshal to deliver Farrell to the penitentiary at Leavenworth. These acts of the court were conceded to be a nullity under the decision of the Supreme Court in Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. Farrell was released from the Wisconsin state prison on January 8, 1935. The marshal executed the commitment and delivered him to the warden of the penitentiary at Leavenworth on January 9, 1935. On October 23, 1935, Farrell instituted a proceeding in

---

[1] Section 4 of the Act of June 25, 1910, 18 U.S.C.A. § 717 provides, " * * * if the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same, for the retaking of such prisoner. (June 25, 1910, c. 387, § 4, 36 Stat. 820.)"

habeas corpus in the District Court of the United States for the District of Kansas, seeking release from imprisonment on the ground that the order of the District Court of Minnesota of December 1, 1928, revoking his probation, having been entered without notice or hearing, was void. While the petition for a writ of habeas corpus was pending in the District Court for Kansas the District Attorney in the District of Minnesota filed a petition in the District Court for the District of Minnesota praying the issuance of a warrant under the probation law for the arrest of the appellant. On November 4, 1935, approximately two years and six months after the end of the maximum period for which Farrell could have been sentenced, the warrant issued, a marshal arrested Farrell and brought him before the District Court for the District of Minnesota which resentenced him. An application for a writ of habeas corpus was filed to the District Court for the District of Minnesota.

The Circuit Court of Appeals for the Eighth Circuit held the purposes of the probation law and of the parole law to be identical and that the corresponding provisions of the two laws should be given the same construction. It concluded that Farrell, a violator of probation, was a fugitive from justice in the same sense that a parole violator is a fugitive from justice, citing the definition contained in Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 45, 68 L.Ed. 247.[2] The court conceded that neither the probation statute nor the parole statute "* * * expressly provides that the period of probation [or] the term of the prisoner's sentence as the case may be shall be extended on account of the breach of conditions of the probation or parole * * *" [87 F.2d 961], but it held none the less that the warrant of November 4, 1935, issued over two and a half years after the expiration of the maximum period for which Farrell might originally have been sentenced, was in strict compliance with the provisions of the statute authorizing the judge to issue it.[3] The decision is a ruling to the effect that time does not run against the maximum period to which a probationer might have been sentenced while he is a fugitive from justice.

█ It is not necessary for me to adhere to the ruling of the Farrell case, however,

[2] It was stated by the Supreme Court in the cited case that "His [Corall's] status and rights were analogous to those of an escaped convict." Citing Drinkall v. Spiegel, Sheriff, 68 Conn. 441, 449, 450, 36 A. 830, 36 L.R.A. 486.

[3] The court said, "The present warrant [of November 4, 1935] is in strict compliance with the provision of the statute authorizing the judge to issue it, and it requires the appellant to be brought before the court for a hearing * * *."

It should be noted that the Circuit Court of Appeals for the Eighth Circuit was interpreting the parole statute in conjunction with the probation statute. The parole statute as it existed after May 13, 1930 (and before the 1932 and 1940 amendment), c. 255, 46 Stat. 272, 18 U.S.C.A. § 723c, provided: "Sec. 3. The said [Parole] board, or any member thereof, shall hereafter have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the institution, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve."

Section 6 of the Act of June 25, 1910, c. 387, 36 Stat. 820, 18 U.S.C.A. § 719, provided, "If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced." This provision has not been changed by any subsequent amendment.

Those portions of the two sections of the parole law which I have quoted were held by the Circuit Court of Appeals for the Eighth Circuit to be analogous to the provisions of Section 2 of the probation law under consideration in the case at bar. In the opinion of the Court of Appeals the phrase from Section 2 of the probation law, 18 U.S.C.A. § 725 "but within the maximum period for which the defendant might originally have been sentenced", was analogous to the phrase, "at any time within the term or terms of the prisoner's sentence" from Section 4 of the parole law. The provisions of Section 2 of the probation law, "the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed" was held by the Court of Appeals to be analogous to the phrase, "the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced" from Section 6 of the parole law.

in order to arrive at the conclusion that the writ should be discharged in the case at bar. In the Farrell case no warrant for the arrest of the defendant had issued within the maximum period prescribed by the statute.[4] The District Court for the Eastern District of Pennsylvania did issue a warrant within the maximum period prescribed by the statute. The warrant of March 13, 1941, was not served because the relator had gone to Georgia and he could not be found despite diligent efforts to locate him.[5] It was not the intention of Congress by the statute sub judice to compel a court of the United States to enter into a race with a convicted defendant in order to execute a warrant against a time limit. This would be unprecedented and would work injury to the orderly administration of justice. Only express words by Congress would effect such an interpretation of the statute. The court issued a timely warrant in due form as prescribed by law. There was literal compliance by the court with the terms of the statute.

■ The warrant of May 3, 1943, issued on a second petition filed by the probation officer which repeated the identical charges made against the relator in the first petition on which the earlier warrant issued. The second warrant was in law an alias warrant, but the relator should not be permitted to rely upon that technicality and assert that the warrant of March 13, 1941, which once had life and power, was dead after it was returned by the Georgia marshal. If the warrant of March 13, 1941, had been held by the marshal until the relator could have been located and arrested under it, even if that arrest had taken place in 1943, for the reasons stated in this opinion, there would be no question of the legality of the relator's arrest or resentencing. The relator's argument consists of a mere technicality and I shall disregard it.

■ I do so because the statute under consideration is a remedial one. As such it is entitled to a liberal construction and one which will effect the purposes of Congress.[6] Scalia v. United States, 1 Cir., 62 F.2d 220; United States v. Antinori, 5 Cir., 59 F.2d 171; Reeves v. United States, 8 Cir., 35 F.2d 323; Nix v. James, 9 Cir., 7 F.2d 590. It was the intention of Congress to effect a probation system which should be of help to the convicted criminal and an aid to his reformation. But it was also the intention of Congress to protect society from the backsliding criminal and to this end it gave the courts of the United States broad powers to cause him to be retaken and resentenced as if the boon of probation had never been offered to him.

An order discharging the writ will be entered.

---

[4] The commitment issued by the District Court of Minnesota on December 1, 1928 was invalid because it was issued without authority of law and does not correspond to the bench warrant issued by the District Court for the Eastern District of Pennsylvania on March 13, 1941.

[5] The record shows repeated moves by the relator from place to place in Georgia. The record will support the conclusion that he did not want to be found by any officer of the law.

[6] See Report (No. 1377) by Congressman Graham of the Committee on the Judiciary of the House of Representatives, accompanying S. 1042, "Probation System in United States Courts, House Reports, 68th Congress, 2nd Session, Vol. 2.