IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2016

**STATE OF TENNESSEE v. CHRISTOPHER LINDSEY**

**Appeal from the Criminal Court for Sullivan County
Nos. S56,998 & S58,126     Jerry R. Beck, Judge**

**No. E2015-02135-CCA-R3-CD – Filed July 6, 2016**

The Defendant, Christopher Lindsey, appeals from the trial court's revocation of his community corrections sentence and order that he serve the balance of his sentence in confinement. On appeal, the Defendant contends that the trial court erred in admitting a certified copy of his nolo contendere plea to a shoplifting charge in violation of Tennessee Rule of Evidence 410; that the court erred by "tolling" his community corrections sentence; and that the trial court did not properly calculate his pretrial jail credits or credit for time served on community corrections. Following our review, we affirm the judgments of the trial court. However, we remand this case to the trial court for the correction of inaccuracies in the revocation order relating to the calculation of credit for time-served.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;
Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Kenneth Hill, Kingsport, Tennessee, for the appellant, Christopher Lindsey.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Barry Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On October 6, 2009, the Defendant was indicted in Case Number S56,998 for one count of aggravated burglary and one count of theft of property valued at $1,000 or more

but less than $10,000. There are no original judgments forms in the record relating to this case. On July 9, 2010, the Defendant was indicted in Case Number S58,126 for one count of theft of property valued at more than $500 but less than $1,000. On July 14, 2010, the trial court entered a judgment in Case Number S58,126 upon the Defendant's guilty plea.[1] The court sentenced the Defendant as a Range I, standard offender to one year and six months to be served on community corrections. The trial court ordered this sentence to run consecutively to the sentence in Case Number S56,998.

On May 18, 2012, the trial court entered amended judgments in Case Number S56,998. The amended judgments reflected that the Defendant had entered guilty pleas to both counts in that case.[2] For Count 1, aggravated burglary, the Defendant was sentenced as a Range I, standard offender to four years, which was ordered to be served on community corrections. The special conditions box of the judgment form contained a statement that the amended judgment had been entered following a "Violation of Community Corrections [H]earing" and that the sentence had been enhanced from three years to four years. Also, the Defendant was ordered "to serve [ninety] days flat in the Sullivan County Jail" before being "placed back into residential community corrections." The Defendant was awarded pretrial jail credits for August 17, 2009, through October 2, 2009, and for March 14, 2012, through May 10, 2012. For Count 2 in Case Number S56,998, the theft of property conviction, the special conditions box again noted that the judgment had been entered following a revocation hearing and that the Defendant's community corrections sentence for that count was enhanced from two years to three years, with ninety days to be served in confinement before his return to community corrections supervision. The pretrial jail credits awarded were identical to those awarded in Count 1. Counts 1 and 2 were ordered to be served concurrently. Therefore, as of the entry of the May 18, 2012 judgments, the Defendant's total effective sentence in Case Number S56,998 was four years, with ninety days to be served in confinement, after which the Defendant would be transferred back to community corrections.[3]

On March 26, 2015, a violation of community corrections affidavit was filed, alleging that the Defendant had violated supervision Rules 1 and 2.[4] With respect to Rule 1, the affidavit alleged that the Defendant had been charged with shoplifting on January

---

[1] The judgment reflects that the Defendant pled guilty, but the record on appeal does not contain a transcript of the guilty plea submission hearing.

[2] Again, the record contains no transcript of the guilty plea submission hearing for Case Number S56,998.

[3] There is no mention of Case Number S58,126 in the amended judgments, but inclusion of that consecutive sentence would bring the Defendant's total effective sentence for both cases to five years and six months as of May 18, 2012.

[4] Rule 1 dictated that the Defendant would "obey the laws of the United State[s] or any State in which [he] may be, as well as any municipal ordinances." Rule 2 required the Defendant to "report all arrests, including traffic violations immediately, regardless of the outcome, to [his] Probation Officer/Counselor."

13, 2015; had been charged with taking contraband into a penal facility, schedule IV drug violations, and possession of drug paraphernalia on February 12, 2015; and had been charged with driving on a revoked license, failure to comply with the financial responsibility law, driving without a valid vehicle registration, identity theft, unlawful possession of drug paraphernalia, schedule II drug violations, and taking contraband into a penal facility on March 4, 2015. The violation of Rule 2 was premised on the Defendant's failure to report the above charges to his community corrections supervisor.

The trial court held a revocation hearing on October 12, 2015. Officer Abby Ford of the Kingsport Police Department ("KPD") testified that on March 4, 2015, she was on patrol when she observed "a car that was trying to get around another vehicle that was stalled in the . . . outside lane." She pulled behind the stalled vehicle, exited her patrol car, and approached the vehicle. She testified that the Defendant was in the driver's seat and that there was a female passenger. Officer Ford asked both occupants for their licenses, but "they said they didn't have [them,] so [she] got their names and dates of birth" to try "to verify who they were." She also asked for the car's registration and proof of insurance, but the Defendant was unable to provide either. Officer Ford obtained the Defendant's driving history and learned that his driver's license had been revoked. Based on this information, Officer Ford placed the Defendant under arrest. The Defendant was searched prior to being placed into the cruiser; the search produced no contraband; and the Defendant was transported to jail.

While in the cruiser, Officer Ford again asked the Defendant what his name was, and he told her it was "Christopher Lindsey." According to Officer Ford, the Defendant had initially told her that his name was "Amon Lindsey." The Defendant explained that Amon was his cousin and that Amon "wouldn't mind" the Defendant's using his name.

According to Officer Ford, before she took the Defendant to jail, she advised him that he could be charged with a felony for bringing contraband into the jail. She said that the Defendant denied having any contraband. Once they arrived at the jail, the Defendant was searched again, and officers located "a blue pill crusher that contained [fourteen] white pills" on his person. Officers also found a "cut pen that would . . . be used to . . . snort the pills with."

On cross-examination, Officer Ford agreed that she never saw the Defendant drive the vehicle and that the car was stationary at the time she encountered it, although she pointed out that "it had to be driven to that point." With respect to the pill crusher and "cut pen" recovered from the Defendant, Officer Ford agreed that she did not know of any law making it a crime to snort medication that had been legally prescribed. She could not recall if there was an investigation to determine whether the Defendant was prescribed any medication at the time of his arrest.

-3-

Stewart Ivy Canter, Jr., testified that he was a member of the John R. Hay House staff and had been assigned to supervise the Defendant in the Community Corrections Program since July 8, 2010. Mr. Canter testified that the present violation was the Defendant's third violation of his community corrections supervision. According to Mr. Canter, the Defendant was informed of the rules of his community corrections sentence when he entered the program, and he had signed an "alternative sentencing order which sets those rules out."

Mr. Canter testified that the Defendant did not report the charges he incurred on January 13, February 12, or March 4, 2015. Mr. Canter said that he did not discover those charges until he performed a routine check of recent arrest records around March 16, 2015. According to Mr. Canter, as part of the Defendant's consent to abide by the rules of the community corrections program, he agreed to "immediately" report any new charges to Mr. Canter.

On cross-examination, Mr. Canter said that, at the beginning of his community corrections sentence, the Defendant reported as required. Mr. Canter testified that he filed the first violation affidavit against the Defendant for failure to report on February 2, 2012. Subsequently, the trial court held a revocation hearing[5] addressing the failure to report violation "along with . . . another violation for receiving . . . new charge[s] . . . ." Mr. Canter said that the "new charge[s]" referred to Case Number S60,827, wherein the Defendant was charged with several counts of theft, identity theft, and forgery.[6]

According to Mr. Canter, after the court imposed a total effective four-year sentence to be served in incarceration in Case Number S60,827, Hay House requested that the State file a motion to "toll" the Defendant's community corrections sentences in Case Numbers S56,998 and S58,126 until the expiration of his sentence in Case Number S60,827. On December 13, 2013, the trial court entered an "Order Tolling Sentence," which ordered that "[t]he Defendant['s] . . . suspended sentence in case S56[,]998 shall be tolled until service of the [Tennessee Department of Correction ("TDOC")] sentence in case [S]60[,]827 is complete." No reference is made to Case Number S58,126 in the order.

Mr. Canter testified that, to his knowledge, the Defendant's sentence in Case Number S60,827 had not yet expired. He said that after the order tolling the community corrections sentence was entered, the Defendant "was told that he needed to continue to report to his parole officer" but was not required to report to Hay House. However, Mr.

---

[5] We assume that this is the May 10, 2012 revocation hearing referenced in the amended judgments for Case Number S56,998.

[6] The judgment forms for S60,827 state that the offense date was March 2, 2012, and list the sentence imposed date as November 29, 2012.

Canter testified that the Defendant "was actually still under a [c]ommunity [c]orrections sentence at the time as well," although he agreed that the Defendant was not "making [any] time on the [community corrections] sentence."

On re-direct, Mr. Canter gave the following explanation regarding the tolling order:

> The reason behind that order was that [the Defendant] was ordered to serve the sentence that he had received on the new charges [in Case Number S60,827]. And therefore, if [the court] had not done that order, he would have continued building time on the [c]ommunity [c]orrections sentence. And the — but the new case was running consecutive to [Case Numbers S56,998 and S58,126], so we had to do that in order to keep him from double[-]dipping into his time.

Mr. Canter testified that the Defendant had most recently signed a supervision order for his community corrections sentence on November 27, 2013.

Following this testimony, all parties agreed to reconvene on October 15, 2015 to present further proof regarding the violations alleged in the affidavit. However, before recessing, the trial court also found the Defendant not guilty of the violation of Rule 2, the failure to report new arrests or charges to his supervisor. The court stated that based on the tolling order and "using the ordinary definition of 'tolling,' it could be that a defendant could be misunderstood [sic] [be]cause of that language."

At the October 15 hearing, the State sought to introduce a certified copy of the Defendant's conviction for shoplifting. The Defendant objected based on Tennessee Rule of Evidence 410, arguing that because the Defendant had entered a nolo contendere plea, the document was not admissible. The court overruled the objection, stating only that "it shows a conviction on a plea of nolo contendere."

KPD Officer Ray Mailloux testified that on February 12, 2015, he responded to a report of a black Honda driving recklessly. Officer Mailloux observed the vehicle driving on the shoulder for fifty to sixty feet, and he initiated a traffic stop. He said that the Defendant was the driver and sole occupant of the vehicle. Officer Mailloux discovered that the Defendant's license had been revoked, and he took him into custody for driving on a revoked license and failure to maintain his lane. Officer Mailloux searched the Defendant prior to placing him into his patrol car. According to Officer Mailloux, he did not find any contraband on the Defendant, but he nevertheless asked whether the Defendant had anything on his person, advising him that once he was taken to jail, any contraband recovered would lead to felony charges. The Defendant denied possessing anything illegal.

Officer Mailloux transported the Defendant to jail, where he was placed in a holding cell to await booking. Officer Mailloux testified that he "went to the . . . jail office for just a second" and "hear[d] handcuffs rattling around from [the Defendant's] holding cell." When Officer Mailloux returned to check on the Defendant, he observed that his handcuffs were no longer behind his back, "they were still 'cuffed in the front position[,] [a]nd he was facing a wall in the holding cell kind of fumbling around up near his chest." Officer Mailloux and the on-duty jailer entered the cell, and the jailer searched the Defendant, recovering "a cut section of a . . . drinking straw that was removed from his mouth; one white pill that was removed from his front left jacket pocket; . . . [and] a small silver — looked like a cheese grater, almost, that was removed from his pocket." Officer Mailloux said that these items formed the basis of the possession of drug paraphernalia charge and that they were consistent with items utilized to misuse prescription medications or other illegal substances. Officer Mailloux said that the pill recovered was sent to the Tennessee Bureau of Investigation ("TBI") where forensic testing revealed that it was alprazolam, a Schedule IV controlled substance.

On cross-examination, Officer Mailloux testified that he stopped the Defendant's car after observing the car's two right tires cross the white fog line, saying that "his vehicle was halfway on the shoulder." He clarified that before transporting the Defendant to jail, he asked him whether he had anything "illegal" on his person. Officer Mailloux said that the straw confiscated from the Defendant did not contain any residue and that the "grater" recovered was not sent to the TBI for testing.

The Defendant called Rebecca Wagers to testify. Ms. Wagers testified that she worked at Marcum's Pharmacy and that one of her job duties was to maintain the pharmacy's medical records, including prescription lists for customers. She said that the Defendant was a customer of Marcum's Pharmacy and that he had filled prescriptions there in the past. According to Ms. Wagers, the Defendant had a prescription for alprazolam in February 2015.

In his closing argument, the Defendant asserted that there was a question as to "whether he was even on probation or not" at the time of the charges that formed the basis of the Rule 1 violations. The Defendant argued that the December 2013 order tolling the suspended sentence in Case Number S56,998 had the effect of stopping his community corrections sentence and discharged him from its attendant obligations. The Defendant pointed out that Mr. Canter testified that the Defendant was no longer required to report to Hay House and that he was not accruing any credit on his community corrections sentence because the sentence in S60,827 had not yet expired.

The prosecutor offered the following response:

-6-

[I]f Your Honor would look at my motion that I filed to toll the sentence, I clearly state what happened. My motion was filed in March of 2013, and it clearly states the Defendant was charged with a violation of [c]ommunity [c]orrections in Case S56[,]998. And that was the case Your Honor gave him [c]ommunity [c]orrections on.

He violated because he got a new charge. We resolved the violation of [c]ommunity [c]orrections after a hearing, and the [c]ourt saw fit to give him another chance and put him back in [c]ommunity [c]orrections. So that closed this court's case out.

In the interim he had felonies pending in general sessions court. Those were bound over to Judge Montgomery's court. Judge Montgomery looked at his record, had a sentencing hearing, and said, "You know what, I'm not giving you a chance. You can go to the [TDOC] and serve your sentence."

At that time I came before the [c]ourt, I filed in writing a motion that said, "The new charges in Case S60[,]827 are to be served in [TDOC] consecutive to the case Your Honor had already given him a Hay House sentence on."

So that's why we tolled it, so that he could go ahead and go to the [TDOC] and get that over with. And then when he served his [TDOC] sentence that Judge Montgomery gave him, come back, meet with Mr. Canter, and have the chance to be on [c]ommunity [c]orrections. And I believe Mr. Canter testified yesterday that he met with him in 2013 after he had finished with [TDOC], went over the rules with him, [and] had him sign the rules. He knew he was on [c]ommunity [c]orrections.

So, I mean, that's where the history of the tolling comes in, just because two courts did two different things.

The defense responded that the supervision order was signed by the Defendant in November 2013 but that the tolling order was issued in December 2013. The Defendant argued that "due process principles" should not allow the State to stop the accrual of credit on his community corrections sentence while at the same time making him subject to the rules of community corrections supervision and filing a violation warrant when he did not adhere to those rules. The Defendant concluded that "his [community corrections] sentence was [not] running, and therefore he [could not] be violated if his sentence [was] not running."

Upon this proof, the trial court found the Defendant guilty of violating Rule 1 for the reasons alleged in the affidavit: that the Defendant had been convicted of shoplifting and had been charged with multiple new offenses following his arrests on February 12, 2015, and March 4, 2015. The court revoked the Defendant's community corrections sentence and ordered his sentence of five years and six months into effect. The trial court subsequently entered a revocation order crediting the Defendant with 632 days, broken down as follows: eighty-four days for "initial" time spent in jail, from July 9, 2010, until September 30, 2010; 490 days for time served on community corrections, from October 1, 2010, to February 2, 2012; and fifty-eight days for time spent in jail after a community corrections violation warrant was filed, from March 14, 2012, to May 10, 2012.

This timely appeal followed.

ANALYSIS

The Defendant contends that the trial court erred in admitting the certified copy of his conviction for shoplifting which resulted from a plea of nolo contendere, arguing that its admission violated Tennessee Rule of Evidence 410. He asserts that this error entitles him to a new revocation hearing. Further, the Defendant contends that the trial court erred in "tolling" his sentences in Case Numbers S56,998 and S58,126, which deprived him of credit for time served on community corrections. Finally, the Defendant contends that the trial court improperly calculated his pretrial jail credit and credit for time served on community corrections, as memorialized in the revocation order. The State responds that the trial court did not err in admitting the shoplifting conviction. Alternatively, the State says that any error was harmless because the trial court relied upon additional conduct irrespective of the shoplifting conviction when revoking the community corrections sentence. The State further responds that the Defendant has waived the issue regarding tolling because he has provided an incomplete record for review. The State also asserts that the Defendant has failed to show that he is entitled to additional pretrial jail credits.

*I. Tennessee Rule of Evidence 410*

Evidentiary rulings generally rest within the sound discretion of the trial court, and on appellate review, a trial court's decision to admit or exclude evidence will be overturned only on a finding of an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).[7] Rule 410(2) provides that evidence of a plea of nolo contendere is not

_____

[7] Although not relevant to this case, we acknowledge that our supreme court has recently clarified that "[t]he standard of review for rulings on hearsay evidence has multiple layers[,]" implicating both abuse of discretion and de novo review. Kendrick v. State, 454 S.W.3d 450, 479 (Tenn. 2015).

admissible in any criminal proceeding against the party who made the plea.  Tenn. Rule Evid. 410(2).  However, although Rule 410(2) bars evidence of a plea of nolo contendere, it does not exclude convictions resulting from such a plea where some other rule of evidence allows.  See Donald F. Paine et al., Tenn. Laws of Evid. §4.10[4] (6th ed. 2011) ("[A] conviction based on a nolo contendere plea may be admissible to impeach under Rule 609 or as substantive evidence under Rule 803(22).")  Tennessee Rule of Evidence 803(22) provides that criminal convictions punishable by death or imprisonment for more than one year are admissible.  However, we note that the State sought to introduce the Defendant's misdemeanor shoplifting conviction, which would not qualify under Rule 803(22)'s exception.  See Paine et al., supra § 8.27[2][b] (noting that the rule "excludes convictions in minor cases because of a concern that the conviction may be untrustworthy as proof of the underlying facts").  Nevertheless, "the strict rules of evidence do not apply" at a revocation hearing.  Barker v. State, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972).  The rules of the Defendant's community corrections supervision required that he would "obey the laws of the United States, or any State in which [he] may be."  In the limited context of a probation revocation hearing, the trial court did not abuse its discretion by allowing the admission of the shoplifting conviction to prove the Defendant's violation of the pertinent supervision rule.  The Defendant is not entitled to relief.

## II.  Suspension of Community Corrections Sentence

The Defendant next contends that the trial court "was without authority to 'toll' [his] sentences in Case Numbers S56[,]998 and S58[,]126 and as a result the Order Tolling Sentence was void and of no effect."  The State responds that this issue should be treated as waived because the Defendant has provided an incomplete appellate record for review and raised the issue for the first time on appeal.  Alternatively, the State asserts that the Defendant is not entitled to relief because the tolling order was proper and was intended to keep the Defendant from "double-dipping," i.e., from receiving credit for his community corrections sentence while serving his incarcerative sentence in another case.

First, we agree that the Defendant raised this issue for the first time on appeal.  In the trial court, the Defendant argued that the December 2013 tolling order stopped his community corrections sentence and, therefore, he could not be charged with violating the rules of his community corrections supervision.  On appeal, he takes the opposite stance, arguing that the tolling order had no effect, that he has been serving his community corrections sentence since it was reinstated on May 10, 2012, and that he should have received credit from May 10, 2012, until the filing of the violation warrant on March 26, 2015.  Accordingly, this issue has been waived.  See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to

prevent or nullify the harmful effect of an error."); see also State v. Maddin, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) ("When an issue is raised for the first time on appeal, it is typically waived."). Based on this conclusion, we do not address the State's assertion that the record is incomplete.

However, although we decline to address this issue as framed by the Defendant, due to the apparent confusion surrounding the tolling order in the trial court, we take this opportunity to briefly address the effect that the incarcerative sentence in Case Number S60,827 had on the Defendant's community corrections sentence for Case Numbers S56,998 and S58,126.

According to Mr. Canter's testimony, he first filed a violation warrant in the Defendant's case on February 2, 2012. The Defendant was then arrested on March 2, 2012, and subsequently charged in a new case—S60,827. At the time of the May 10, 2012 revocation hearing, those new charges were still pending. Nevertheless, the trial court chose to return the Defendant to community corrections. On November 2, 2012, a different trial court sentenced the Defendant to four years in the TDOC for Case Number S60,827. That sentence was ordered to be served consecutively to the community corrections sentence for Case Numbers S56,998 and S58,126.

"When a trial judge . . . orders an intervening sentence of incarceration to run consecutively to a suspended sentence, . . . the probationary term begins upon completion of the intervening custodial sentence and custodial sentence includes both confinement and parole." State v. Malone, 928 S.W.2d 41, 44 (Tenn. Crim. App. 1995) (citing Anderson v. Corall, 263 U.S. 193, 196 (1923)). In such cases, a defendant must serve the period of confinement first. Id. After a defendant serves the intervening custodial sentence, the probationary term resumes. Id.

In light of these principles, the trial court's "Order Tolling Sentence" was largely superfluous because the Defendant's community corrections sentence for Case Numbers S56,998 and S58,126 was stayed when he was ordered to serve an "intervening custodial sentence" in Case Number S60,827. From the record, we cannot discern when the Defendant was released from confinement in Case Number S60,827 or when that sentence is set to expire. The four-year sentence in that case was imposed on November 29, 2012, but he received jail credit in that case beginning on June 2, 2012. Also, he had obviously been released from incarceration by at least January 13, 2015, when he was arrested for shoplifting.

Regardless, a trial court has the authority to revoke a suspended sentence for "pre-probation conduct occurring during a period of parole." Malone, 928 S.W.2d at 45. Consequently, even if the Defendant is still on parole in Case Number S60,827, the trial court had the authority to revoke the community corrections sentences for conduct that

-10-

violated the terms of his community corrections supervision. "[I]f the trial court was unable to revoke probation either during incarceration or parole, the [defendant] would be provided a grace period in which his activity, no matter how heinous, would not affect his probationary release into society." Id. Accordingly, the trial court's "Order Tolling Sentence" was not necessary to prevent the Defendant from receiving credit for community corrections while he was in TDOC serving his custodial sentence. We see no unfairness to the Defendant in this scenario—the trial court's actions had the effect of ensuring that, because of the Defendant's repeated failures to follow the law, he would not be afforded the opportunity to return to community corrections following the expiration of his sentence in Case Number S60,827. Indeed, to conclude otherwise would be to provide the Defendant with a "grace period" during his time on parole, in which his illegal activities would have no effect on his suspended community corrections sentence.

## III. Pretrial Jail Credits

Finally, the Defendant asserts that the trial court failed to award him pretrial jail credits for the "[ninety] days flat" that he was ordered to serve in Case Number S56,998 after the revocation hearing held on May 10, 2012. He also avers that the trial court should have credited him for time served on community corrections from May 10, 2012, until March 26, 2015. The State disagrees, arguing that there is no proof in the record that the Defendant has served the ninety-day sentence.[8]

The amended judgments for Case Number S56,998 reflect that following the May 10, 2012 revocation hearing, the trial court ordered that the Defendant "serve [ninety] days flat in the Sullivan County Jail . . . (with credit from [March 14, 2012])." A total of fifty-eight days, from March 14 to May 10, 2012, is credited in the trial court's revocation order. Further, the judgment forms in Case Number S60,827 reflect that he received pretrial jail credit in that case beginning on June 2, 2012. It is unclear whether the Defendant was in custody from May 11, 2012, until June 1, 2012, a period of 22 days. However, it seems likely that the Defendant was either in custody in Case Number S56,998 on those dates or he had been released and should have received credit for community corrections for those twenty-two days, a determination the trial court should make on remand. Also, the judgment forms for Case Number S58,126 list a pretrial jail credit of one day, for May 19, 2010, although that is not reflected in the revocation order. Similarly, the judgments for Case Number S56,998 afford pretrial jail credits from August 17, 2009, to October 2, 2009, but those credits are not reflected in the revocation order either.

---

[8] The State does not supply a response to the Defendant's request for additional community corrections credit.

Although the Defendant asserts that there are at least ninety days of pretrial jail credits unaccounted for, he has pointed to nothing in the record showing when he could have served that time following the May 10, 2012 revocation hearing.[9]

In addition to the above inaccuracies in the revocation order, there are internal inconsistencies as to the length of the Defendant's total effective sentence for Case Numbers S56,998 and S58,126. The revocation order should be corrected to reflect that the total effective sentence for both cases is five years and six months. Also, as previously discussed, from the record we cannot determine when the incarcerative sentence in Case Number S60,827 expired or is set to expire. On remand, the trial court needs to make this determination to ensure the proper calculation of sentence credit. If the Defendant's sentence in Case Number S60,827 had expired before the March 26, 2015 violation warrant was filed, the Defendant would be entitled to community corrections credit from the date that the sentence expired until the date the violation warrant was filed.

Therefore, we remand to the trial court to determine whether the Defendant was in custody during the twenty-two unaccounted for days or had been released back on community corrections and for entry of a corrected revocation order reflecting the proper credit for that time and to correct the total effective length of the Defendant's sentence. Also, the revocation order should incorporate the pretrial jail credits memorialized in the relevant judgment forms for May 19, 2010 and August 17, 2009 to October 2, 2009, 48 additional days. Finally, the trial court should determine when the sentence in Case Number S60,827 expired or is set to expire and, based on that determination, whether the Defendant is entitled to any additional credit on his community corrections sentence. With respect to the Defendant's argument that he should have received community corrections credit for service from May 10, 2012, until the March 26, 2015 violation affidavit was filed, we refer to our earlier discussion explaining that the Defendant's community corrections sentence was stayed during the service of his incarcerative sentence in Case Number S60,827.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgments of the trial court are affirmed. However, because we discern an error in the trial court's calculation of credit for time-served, we remand this case for entry of a corrected revocation order as

---

[9] Even if the trial court determines on remand that the twenty-two days that are unaccounted for were spent in jail for Case Number S56,998, that would still only total eighty days when added to the period beginning on March 14, 2012.

outlined above. Also, the revocation order should reflect that the Defendant's total effective sentence in these cases is five years and six months.

_____
D. KELLY THOMAS, JR., JUDGE